## LANSDOWNE REALTY TRUST v. COMMISSIONER OF INTERNAL REVENUE.
### No. 2545.

Circuit Court of Appeals, First Circuit.
May 28, 1931.

Alonzo H. Garcelon, of Boston, Mass., for petitioner for review.

J. Louis Monarch, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., F. Edward Mitchell, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, and J. K. Polk, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the Commissioner.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a petition to review an order or decision of the Board of Tax Appeals affirming the commissioner's assessments of deficiency taxes against the petitioner in the sum of $1,585.53 for the year 1923, of $1,342.44 for the year 1924, $800.11 for the year 1925, and $568.83 for the year 1926. The statutes involved are section 2 (2) of 1921 (42 Stat. 227, 252), § 2 (a) (2) of 1924 and 1926, and section 230 of the Revenue Acts of 1921, 1924, and 1926 (26 USCA §§ 1262 (a) (2), 981 note), and section 704 (a) of the Revenue Act of 1928, 26 USCA § 2704 (a).

The question is whether the petitioner, a Massachusetts trust, is an association and therefore taxable as a corporation under the provisions of the revenue acts above referred to.

The Hammond Real Estate Trust, having determined to wind up its affairs and be dissolved, on February 28, 1920, conveyed, subject to a mortgage for $55,000, 15,000 square feet of land, with a one-story building thereon, situated in Boston, to certain individuals, trustees of the Lansdowne Realty Trust under a declaration of trust executed on the same day, together with the benefits of and subject to the rights and easements created under a lease of the property made by the Hammond Real Estate Trust on the 19th day of February, 1920, to the Standard Steel Motor Company and the Standard Steel Car Company, which lease was to run for five years from March 1, 1920, and in which the lessees, in addition to agreeing to pay the rent for the entire building, agreed to pay the taxes, make repairs, keep up the insurance, and, in case the lessor supplied elevator service, power, steam, water, heat, gas, or electricity, the lessees agreed to pay such charges.

The declaration of trust provided that the trustees would hold the granted premises for the benefit of the cestuis que trustent, "who shall be trust beneficiaries only, without partnership, associate or any other relation whatever inter sese." The trustees were authorized (1) to convert the property into money and distribute the proceeds among the beneficiaries existing at the time of the conversion, with the right in the trustees, in their discretion, to defer the conversion for a period not to exceed twenty years; (2) pending final conversion the trustees were to manage and control the trust property, having the powers and authority they would have if they were themselves sole owners in fee; (3) to collect all rents and income and semiannually to distribute such portions thereof as they might, in their discretion, determine to be fairly distributable net income to the beneficiaries, with authority to use any funds on hand, income or capital, for purposes of repair, improvement, protection, or development of the property, or the acquisition of other property as the trustees might determine to be wise for the protection and development of the trust property as a whole; (4) to borrow money and give any pledge, mortgage, or other security; and (5) employ such agents or attorneys as they might think proper. It provided that the trustees should keep books of account and records of their doings, and annually render an account of the trust. They were to receive as compensation for their services a sum not to exceed 1 per cent. of the gross income. Vacancies in the office of trustee were to be filled by the remaining trustees, with the written assent of the holders of a majority in amount of the beneficial interests. But in case a trustee was absent from the state or was incapacitated through illness or otherwise from acting, then a majority of the trustees were authorized to exercise the powers therein conferred upon all the trustees. The terms of the trust could be modified by the trustees, with the written consent of a majority in interest of the beneficiaries.

The trustees were Arthur H. Tabor, Wendall Tabor, Sturgis Coffin, and Rodman

Schaff. Arthur H. Tabor was a beneficiary to the extent of 20 per cent. of the beneficial interests; Wendall Tabor, his son, and Elizabeth W. Tabor, his daughter, each owned 10 per cent.; Elizabeth W. Coffin held a life interest in 20 per cent., the reversion being in Sturgis Coffin; and Sarah T. Coffin and Sturgis Coffin, as trustees of William H. Coffin, deceased, held 40 per cent.

During the years in question the firm of Coffin & Tabor, consisting of Sturgis Coffin, Arthur H. ·Tabor, and one Dolben, collected the rents from the building and paid the same directly to the beneficiaries monthly, according to their interests. The partnership kept books showing the amount of income received, the expenses paid, and the amounts distributed to the beneficiaries. They also looked after the unrented portions of the building, insured the property, and operated a central boiler for the tenants, although the partnership had no contract with them and received no compensation for these services. The trustees held no meetings, had no bank account, and kept no books. A few improvements and necessary repairs to protect the property were made and some new leases and extensions of old ones were made, and the $55,000 mortgage was extended.

■ The Board of Tax Appeals held that the trust was an association taxable like a corporation (1) for the reason, as stated in their opinion, that a majority in interest of the beneficiaries were a majority in number of the trustees and thereby in control of the trust; and (2) for the reason that the trustees were carrying on business.

We think the board erred as to the first reason, for the facts specifically found by them show that a majority in interest of the beneficiaries did not constitute a majority in number of the trustees. The only trustees who held a direct and immediate interest as beneficiaries were Arthur H. Tabor and Wendall Tabor, who together owned.30 per cent. The 40 per cent. was not held by Sturgis Coffin as a beneficiary, but as cotrustee with Sarah T. Coffin for the benefit of the estate of William H. Coffin; and Sturgis Coffin had no interest in the 20 per cent. belonging to Elizabeth W. Coffin during her life. Then, again, the trustees did not act by a majority in the conduct of the trust. The declaration of trust required all the trustees to act as a unit in every case except when a trustee was absent from the state or was incapacitated

through illness or otherwise from acting, in which case the majority, acting as a unit, could exercise the powers of the trust.

■ We are also of the opinion that the trust was not an association and taxable as a corporation on the ground that it was doing business as such. It it true that the trustees had powers of a broad character, but they did not exercise them and were not carrying on business after the form and manner of a corporation. When the trustees received the property, it had all been leased for a term of five years from March 1, 1920. During this period of five years the trustees were not called upon to seek tenants or to do anything with reference to the property of any consequence except to collect the rents and turn them over to the beneficiaries. By the terms of the lease the lessees were to keep the premises in repair, pay the insurance, and be responsible for all damages connected with the building. It is perfectly apparent that they were not doing business in any sense, during the years 1923 and 1924, and we are of the opinion that, during the years 1925 and 1926, they were not conducting business after the mode and manner of a corporation, but were doing nothing more than trustees ordinarily would be called upon to perform in the management of trust property. See Gardiner v. United States, 49 F.(2d) 992, decided by this court Feb. 19, 1931; Malley v. Howard (C. C. A.) 281 F. 363; Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949; Little Four Oil & Gas Co. v. Lewellyn, 35 F.(2d) 149; Lucas, Com'r, v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65; Id., 16 B. T. A. 1028.

This case differs materially from United States v. Neal (C. C. A.) 28 F.(2d) 1022, for there the trustees not only had broad powers, but exercised those powers by loaning the funds of the trust on real estate mortgages. They also made construction loans, loans on collateral securities, bought accounts receivable and notes, made contracts of conditional sale, dealt in stocks and bonds, and owned a large building in Worcester which they maintained and let to numerous tenants. See opinion of the District Court reported in 26 F.(2d) 708, for the facts. In that case the trustees were clearly doing business after the manner of a corporation, and we so held.

The order or decision of the Board of Tax Appeals is reversed, and the case is remanded to that board for further proceedings not inconsistent with this opinion.