## TYSON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4559.

Circuit Court of Appeals, Seventh Circuit.
Dec. 9, 1931.

KixMiller, Baar & Hoffman, of Chicago, Ill. (Arnold R. Baar and Arthur R. Foss, both of Chicago, Ill., of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and J. Louis Monarch and W. Earl Smith, Sp. Assts. to Atty. Gen., and F. Edward Mitchell, of Washington, D. C. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Bruce A. Low, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Petitioners reported taxable income for the years 1925, 1926, and 1927. The correctness of the taxes assessed thereon is the only question presented to us. Respondent contends that the Zenith Real Estate Trust was taxable as a corporation. Petitioners, on the other hand, argue that it should have been taxed at the rate the revenue acts provided for the taxation of a trust. Two small items, penalties for the years 1925 and 1926, amounting to $176.68 and $185.87, were also involved, but the correctness of petitioners' position in reference thereto is now conceded by respondent.

Was the Zenith Real Estate Trust for the purposes of income taxation a corporation or a trust?

The revenue acts provided for different rates of taxation on the income of corporations and trusts. They defined the term "corporation" as follows: "The term 'corporation' includes associations, joint-stock companies, and insurance companies." Section 2 (a), Revenue Acts of 1924 and 1926 (26 USCA § 1262 (a).

The trust indenture which created the Zenith Real Estate Trust contained provisions below set forth.[1]

---

[1] "We, (three persons) * * * for the benefit of the beneficiaries of the trust by this instrument

Briefly stated, the testimony showed:

The trustees, who organized the trust, purchased Duluth real estate in July, 1920; the three trustees and a fourth person each contributing $5,000 toward the down payment. Each later contributed $2,500. Subsequently other persons subscribed, to whom trust certificates were issued. The single piece of property purchased was occupied by a Kresge store under a lease which obligated it to pay all taxes, assessments, insurance of all kinds, to keep the building in good repair, and to restore any part destroyed. The trustees held title to the property, but appointed an agent to collect the monthly rentals and see that the tenant complied with its obligations.

The trustees met occasionally to consider the value of the property and its possible disposition, as well as for the declaration of dividends from income. They had no other activities. They had no officers. No meeting of the beneficiaries was ever held, although the principal certificate holders were consulted orally at or about the time the property was sold in 1926. Dividends for each six months were paid out of the income, and the trustees at one time set aside a depreciation fund of $5,000 and invested it in bonds, which bonds were held for about a year. Interest from these bonds

and from the bank deposits was the only interest collected. The property, the only real estate ever held, was sold in December, 1926, and the proceeds were distributed among the beneficiaries. The trust was thereupon dissolved. A substantial profit was realized from the sale of the property.

Both counsel cite Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 464, 68 L. Ed. 949, to support their positions. Aside from the fact that it is a Supreme Court decision, we see little reason for the emphasis placed upon this holding. The question there decided is not the one here presented. It is true, the court was there considering a tax (excise), and the taxpayer, as here, was a Massachusetts trust. But here the similarity stops. "Doing business" was the test for the imposition of the excise tax, not the character of the instrumentality that transacted the business. Moreover, to be taxable, the entity was required to be a "corporation, joint-stock company or association, now or hereafter organized in the United States for profit." There was not, as here, two sections of the revenue act to be con-

created, do hereby covenant and agree * * *

"(1) (to) * * * acquire title to the following described real estate in the City of Duluth, * * * and the buildings and improvements situated thereon, described as follows. * * *

"The trustees may also acquire title to other real estate * * * and develop the same * * * and managing and leasing, mortgaging or selling the same or any part thereof and otherwise dealing with the trust property as herein set forth.
* * * * * * * * *

"(3) Said trustees shall use all money paid to them as such, * * * for the purchase and improvement of real estate in the cities of the United States, * * * including the shares of or interests in trusts or corporations formed for the purpose of purchasing and improving real estate, and all property shall be held by them in joint tenancy as trustees hereunder. * * *

"(4) Said trustees shall have * * * as absolute control over and disposal of all * * * property held by them * * * under this trust * * * including the power to sell * * * on such terms and conditions as they deem best, to mortgage or pledge, * * * to lease or hire for improvement * * * for a term beyond the possible termination of this trust or for any less term, * * *.

"Said trustees shall have power to borrow money and to secure repayment of the same * * *; but neither said trustees, nor any shareholder hereunder, shall be personally liable for any money so borrowed. All persons dealing with said trustees shall look only to the property of the trust for payment of their claims. * * *

"(5) Said trustees may set aside such portion of the annual income as they may deem prudent for a contingent fund, or sinking fund, or both. They shall divide the remainder of the net income of the property held by them under this trust among

the shareholders annually, or oftener, at their discretion, and their decisions as to what constitutes net income from time to time shall be final. * * *

"(6) Said trustees may from time to time incur and pay reasonable expenses for the transaction of the business of the trust, * * *.

"The compensation of said trustees for their ordinary duties shall not exceed five per cent of the income of the property held by them under this trust.

"(7) Said trustees shall issue certificates or receipts in such form as they shall deem best for each sum of $100 or for multiples thereof, paid to them under this agreement; but no certificate shall be issued for any less sum than $100 which shall be deemed a share. * * *

"(8) Shares may be transferred on the books of said trustees, * * *

"(9) Said trustees may from time to time, at their discretion, invite and receive further subscriptions for the purpose of increasing the capital of the trust, upon such terms and conditions as they shall deem best.

"(10) No assessment shall ever be made upon any of the shareholders or beneficiary hereunder.

"(11) The books of said trustees shall always be open to the inspection of shareholders.

"(12) Any trustee under this agreement may resign his trust. * * * The remaining trustees shall fill any and all vacancies that may be caused by death or resignation, * * *. All powers hereunder may be exercised and all deeds and other instruments may be executed by two of the trustees and their decision shall be binding upon all. * * *

"(13) At the expiration of twenty-one years, after the death of the last survivor of the following named persons: * * * or at such earlier time as two or more * * * trustees * * * may appoint, said trustees shall terminate this trust by selling all property then held by them, as such, and dividing the proceeds among the shareholders.

"(14) Said trustees shall be responsible only for a wilful breach of trust, and each shall be responsible only for his own acts.

"(15) This declaration of trust may be amended from time to time by the said trustees. * * *"

strued; one covering corporations (including associations), and another covering trusts. Obviously, as the Congress in the revenue acts under consideration dealt with both entities and provided different tax rates for each, it could not have intended the term "association" to have been synonymous with the word "trust," as that term was used by it. Revenue Acts 1924, 1926, § 219 (a), 26 USCA § 960 note.

Our question then is, When is a Massachusetts trust an association under these acts, and when is it a trust?

Probably the best test is to be found in the activities of the entity. One could readily conceive of a Massachusetts trust being possessed of powers and so exercising them that for taxation purposes it should be called a corporation. An illustration of this is to be found in Trust No. 5833, Security-First Nat. Bank v. Welch (D. C.) 50 F.(2d) 613. Likewise, it is easy to conceive of a Massachusetts trust so designed and so purposed as to be considered a trust as that term is used in the revenue acts. For an illustration of this, see Lansdowne Realty Trust v. Commissioner of Internal Revenue (C. C. A.) 50 F.(2d) 56. It necessarily follows then, and numerous decisions sustain this view, that in determining when a trust is an association courts must look to the substance rather than the form of the entity used to carry on the business. Likewise it must be more influenced by the instrument's activities than the ascertainment of the possible field of its activity. Gardiner v. United States (C. C. A.) 49 F.(2d) 992; Little Four Oil & Gas Co. v. Lewellyn (C. C. A.) 35 F.(2d) 149; Lansdowne Realty Trust v. Commissioner (C. C. A.) 50 F.(2d) 56. This does not mean that we should not look to the articles of agreement which brought the entity into being. An examination of this document will aid a court in construing the activities and in weighing the taxpayer's asserted intention respecting its activities.

In the instant case, the articles of agreement which brought the Zenith Real Estate Trust into existence suggest that the counsel drawing the articles entertained for it somewhat pretentious hopes for its future enlargement. Its witnesses, however, upon the hearing before the Board, said that it was conceived and brought into existence for the single purpose of acquiring a single piece of real estate; that such real estate had been leased for a long period to a responsible lessee; and that the said lessee kept the property in repair, and paid the taxes, in addition to the rental. In short, the investment was one which provided with reasonable certainty for a sure and fixed income without either care or supervision. They also say this plan was never departed from, save once when $5,000 of the income was invested in bonds. This departure, however, was also for the purpose of making more certain said income. The insertion in the articles of agreement that the trustees might purchase other property may be ascribed to the caution of counsel to take care of the unforeseen and unforeseeable, rather than to impeach the witnesses who testified respecting the promoters' intentions to limit the trust to a single investment, the return from which was to furnish a fixed and steady income for the beneficiaries.

Considering all of the facts and circumstances disclosed, we conclude that the Zenith Real Estate Trust was, for the purpose of the taxation of its income for the years in question, not a corporation. It should have been taxed as a trust.

The order of the Board of Tax Appeals is reversed, with directions to proceed in accordance with the views here expressed.