# FISK et al. v. UNITED STATES.

## No. 5030.

District Court, D. Massachusetts.

Aug. 16, 1932.

Theodore Hoague, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge.

This is a petition by the trustees of the Main Street Trust to recover income taxes for the year 1927, alleged to have been illegally assessed and collected, in the amount of $950.89. The single question presented is whether the Main Street Trust was an association taxable as a corporation for the year 1927.

This question is presented upon stipulation of the parties and evidence introduced

by the plaintiff, from which the following facts were established:

In 1864, William Fisk died testate, leaving interests in real estate to trustees to hold for the benefit of certain named beneficiaries. The trustees held the property until sales could be made at advantageous prices. From 1885 to 1890 sales were made whenever satisfactory offers were received. As a result of doubts which conveyancers had expressed as to the validity of the testamentary trust, the trustees and all the beneficiaries, in 1894, conveyed their interest in the real estate then remaining in the trust created by the will to trustees under a written declaration of trust who were to hold the property in trust for the same beneficiaries in the same proportion as they took under the will. This trust was for a limited period, and was succeeded by other similar trusts until, in 1909, the Main Street Trust, involved in this suit, was created. To the trustees under the trust of 1909 were conveyed six parcels of land situated in Cambridge, Mass.; one of these parcels being the flats in the Charles River. The five parcels were, for convenience of sale, divided into twelve. One of these parcels the plaintiffs' predecessors in title had leased with option to purchase. The lease provided that, in case of default, the title to the land and all buildings erected thereon should revert to the trustees. The lessee erected a building on a portion of the leased premises and subsequently defaulted. With the exception of this building, all the property coming under the trust of 1909 was vacant land. The plaintiffs sold parcels of land from time to time. Eleven of the twelve parcels had been sold prior to 1927. The building, above referred to, had been remodeled into four separate buildings, and two of these were sold in 1922. The only real estate, therefore, in the Main Street Trust, during the year 1927, was the remaining two buildings, which were sold in 1930, and the Charles River flats. These two buildings were leased to tenants for a period of years. No lease has been executed since 1924. The lessors were not required to furnish any heat, power, elevator, janitor, or other service under the lease. The trustees only collected the rent, paid taxes, insurance premiums on the buildings, and distributed the balance, less a reasonable reserve for emergencies, to the beneficiaries. They occasionally made necessary outside repairs. In 1927, they expended $307.38 for repairs; $215.63 of this was for stucco on the outside walls; $91.75 was for repairs to the dome on the building. The expenses for that year were extraordinary.

In 1928, only $25 was expended. The trustees paid a small weekly wage to a watchman whose duty was only to report to the trustees anything out of the ordinary relating to the buildings.

The principal purpose of the Main Street Trust, from its inception, was to liquidate the real estate as fast as favorable offers were obtainable. The cash proceeds of all sales were distributed among the beneficiaries as soon as received. None of it was ever reinvested or used in any business for profit. Mortgages, taken as a part of the purchase price for land sold, were collected by the trustees and the proceeds distributed to the beneficiaries. The beneficiaries were, with one exception, heirs of William Fisk. The exception was one who had acquired the interest of one of the heirs. The beneficial interests were represented by shares which were originally issued to the holders in proportion to their beneficial interests in the real estate. No additional shares have ever been issued.

Under the terms of the trust agreement, as amended in 1921, the shareholders had no powers in connection with the trust and no control over the trustees except to approve a trustee nominated by the surviving trustees; to apply to the probate court for the appointment of a new trustee if the remaining trustees failed to fill a vacancy. Two-thirds of the shareholders could terminate the trust and could approve amendments to the trust. Neither the trustees nor shareholders held any formal meetings. There are no officers, and no office has ever been maintained by the trustees, and no clerical employee has ever been employed. The powers conferred upon the trustees by the terms of the trust were broad enough to permit the purchase of other lands, building upon or otherwise developing the land, and doing whatever was necessary or expedient to accomplish the desired end, but these powers were never exercised.

It is the claim of the defendant that on these facts the Main Street Trust must be held to be an association and taxable as a corporation under the Revenue Act of 1926 (44 Stat. 9) and article 1504 of Regulations 69 which reads as follows: "Association distinguished from trust.—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent

may be required for the filing of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by section 219 and by articles 341–347. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 2. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute."

 This regulation does not appear to be compatible with the decisions in this and other circuits. According to it, the classification turns (a) upon the measure of control over the trustees which the shareholders may exercise; and (b) upon the extent and character of the powers conferred upon the trustees by the terms of the instrument creating the trust. It is now pretty well settled that the test is not what powers or authority reside in the trustees or the shareholders, but, as stated by Judge Anderson in Gardiner v. United States (C. C. A.) 49 F.(2d) 992 at page 996, "the crucial test must be found in what the trustees actually do, not in the mere existence of long unused broad powers." To the same effect, see Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; White, Collector v. Hornblower (C. C. A.) 27 F.(2d) 777; Lansdowne Realty Trust v. Commissioner (C. C. A.) 50 F. (2d) 56; Tyson v. Commissioner (C. C. A.) 54 F.(2d) 29; Little Four Oil & Gas Co. v. Lewellyn (C. C. A.) 35 F.(2d) 149; Lucas, Com'r, v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65.

These cases are clearly decisive on the issue in the case at bar. The Main Street Trust was formed for the sole purpose of liquidating, for distribution among the shareholders, real estate which had been devised to them by an ancestor. The trustees were never engaged in any business for profit, and the trust res was never employed in any way for gain or profit. That the trust property yielded a revenue and money was spent in repairs were factors merely incidental to the main purpose of the trust. The activities in which the trustees engaged did not constitute the carrying on of some busi-

ness within the meaning of the regulation, nor were they sufficient to bring the trust within the definition of a corporation as defined in the Revenue Act of 1926, § 2 (26 USCA § 1262). On the facts of this case, it cannot be distinguished from Gardiner v. United States, supra.

The tax was illegally exacted, and the plaintiff may recover according to his petition.

Judgment for the petitioner may be entered in the sum of $950.89 and interest.