## ITTLESON et al. v. ANDERSON, Collector of Internal Revenue.

District Court, S. D. New York.
Feb. 9, 1933.

Bernhard Knollenberg, of New York City (Lord, Day & Lord, of New York City, of counsel), for plaintiffs.

George Z. Medalie, U. S. Atty., of New York City (Murray I. Gurfein, Asst. U. S. Atty., of New York City, of counsel), for defendant.

KNOX, District Judge.

This is an action to recover $5,075, the amount paid by plaintiffs as federal capital stock tax for the tax years ending June 30, 1921, to June 30, 1926, both inclusive. The question to be decided, upon cross-motions for a directed verdict, is whether plaintiffs, as trustees of the Ittleson Investment Trust, are subject to capital stock taxes. This, in turn, depends upon whether the Ittleson Investment Trust, which is of the Massachusetts variety was an "association" which was "doing business" within the meaning of sections 2 and 1000 of the Revenue Act of 1921 (42 Stat. 227, 294), and sections 2 and 700 of the Revenue Act of 1924 (26 USCA §§ 1262, 223 note). These provisions of the respective acts are identical and read as follows:

That "when used in this title * * *

"(2) The term 'corporation' includes associations, joint-stock companies, and insurance companies. * * *

"Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30th as is in excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included."

There is no substantial dispute as to the facts. The trust in suit was established under an agreement and declaration of trust, dated December 31, 1919, providing that the trust should continue until three years after the death of the survivor of four named persons, unless sooner terminated by a majority of the trustees. Henry Ittleson transferred to himself, Phillip W. Haberman, and Blanche F. Ittleson, as trustees of the trust, a stock certificate for 727½ shares of the common stock of the Light & Development Company of St. Louis. A few days later, he added to the corpus of the trust certain blocks of the common stock of Commercial Investment Trust Corporation, Moloney Electric Company, Goldwyn Pictures Corporation, and American Auto Insurance Company. These holdings comprised the entire assets contributed to the trust.

The declaration of December 31, 1919, provided that there should be 500 "beneficial participation shares," and two instruments designated "certificate for beneficial participation shares," each covering 250 of such shares, were delivered by the trustees to Mr. Ittleson, who has never transferred them, or any part of them, to any one else.

The "general purposes of this Trust," as set forth in article II of the trust agreement, were "to hold, manage, collect, dispose of, in-

vest and reinvest, liquidate and distribute the Trust Estate and the income and profits thereof and additions thereto."

It was further stated that the trustees should have the power "to do all and singular such things as may be necessary or appropriate to effectuate such purposes in whole or in part and the Trustees may engage in any business or undertaking or enterprise in their judgment reasonably necessary or desirable or adapted to the carrying out of said general purposes."

The trustees were also empowered to buy and sell all kinds of property, to lend money, and to make gifts.

Article III sets forth an extensive list of the specific powers of the trustees. In addition, subsection (r) of section 1 gives the trustees blanket authority "in all matters and respects, to deal with the trust estate and to manage and conduct the trust hereby created * * * as fully as if the trustees were the absolute owners of the trust estate. * * * *"

The instrument also authorizes the trustees to appoint committees, and to adopt a seal, but neither of these powers was ever exercised. The trustees have held no formal meetings. While they came together occasionally, no minutes or other record of their action was preserved.

The beneficiaries of the trust are without power, except that, in case of the death, resignation, or inability to act of all the trustees, they may elect successor trustees. There has been no need for any such action upon the part of the beneficiaries.

During the years 1920–1926, inclusive, the period in question, the trustees received dividends totaling $535,737.06, interest in the sum of $82,654.19, and a net profit from the sale of securities of $448.70. Out of this income, they paid taxes of $37,616.19, together with other charges or expenses in the sum of $5,010.16, thus leaving a net balance of income amounting to $576,213.60. This sum was depleted to the extent of $200,000 through a distribution thereof, in 1925 and 1926, to Mr. Henry Ittleson, as sole beneficiary. The remainder was loaned at interest by the trustees, for some years principally to Mr. Ittleson, and during the last two years principally to the Ittleson Securities Company, a corporation in which a substantial interest was held by the trustees.

The trust engaged in the following stock transactions:

*December 31, 1919, to June 30, 1921.—* The trust received the following stocks: Light & Development Company of St. Louis, American Auto Insurance Company, Goldwyn Pictures Capital Stock, Moloney Electric Company, Commercial Investment Trust Corporation "B". During this fiscal period, the trust sold the stock of the Goldwyn Pictures Corporation and the stock of American Auto Insurance Company. The sale of the thousand shares of Goldwyn resulted in a loss of $12,130, and the sale of 56¼ shares of the American Auto stock resulted in a profit of $5,625, resulting in a net loss of $6505.

*July 1, 1921, to June 30, 1922.—* In this period the trust received Commercial Investment Trust Corporation "A" stock as a stock dividend. It also sold 40 shares of the Moloney Electric Company stock.

*July 1, 1922, to June 30, 1923.—* The trust received Moloney shares by way of stock dividend. The trust exchanged for its shares of Light & Development Company of St. Louis proportionate stock shares in North American common, North American preferred, and Union Electric Light & Power first preferred. The trust also purchased during this period additional shares of Commercial Investment Trust Corporation B stock for the sum of $24,189. The money necessary for the purchase of this stock was borrowed from the Columbia Bank for the specific purpose of engaging in this stock purchase. Within this fiscal period the trust also bought and sold 600 shares of May Department Store common stock. This stock was apparently bought on margin through H. Content & Co., stockbrokers. See journal entries 130–132, 135, and ledger (Exhibit 4) p. 199. The trust also participated in a syndicate known as the Amster Oil Syndicate during this period. It also purchased bonds of the United States Public Service Company. It also purchased 7 per cent. notes of Goldwyn Pictures Corporation. It also sold 61 shares of its Commercial Investment Trust Corporation B stock.

*July 1, 1923, to June 30, 1924.—* In this period the trust received by exchange shares of Commercial Investment Trust preferred and purchased shares of North American Company common. Both of these stocks it exchanged for capital stock of the Ittleson Securities Corporation. The trust also exchanged shares of Moloney stock for shares of Ittleson Securities Corporation. It also exchanged Commercial Investment Trust B stock for Ittleson Securities Corporation stock. Later, in the same fiscal period, the trustees exchanged Ittleson Securities Corporation stock for Ittleson Securities Company stock. During this fiscal period the

trustees also sold the United States Public Service bonds which had been purchased within the preceding fiscal year. It also sold the Goldwyn Pictures 7 per cent. notes which had also been purchased within the preceding fiscal year. The trustees during this period also lent $2,000 to James A. Burr; the loan being secured by a chattel mortgage on objects of art in Florence, Italy.

*July 1, 1924, to June 30, 1925.*—In this period the trust sold 78 shares of Commercial Investment Trust preferred.

*July 1, 1925, to June 30, 1926.*—In this period the trust received $8,000 of the $10,000 which had been previously invested in the Amster Oil Syndicate.

The trustees also exercised rights to subscribe for 578 additional shares of Commercial Investment Trust Corporation B stock, paying therefor $34,680.

Upon the foregoing facts, was the Ittleson Investment Trust taxable as an "association" which was "doing business" within the meaning of the Revenue Acts? Two decisions by the Supreme Court of the United States are particularly pertinent to the inquiry, viz. Crocker v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601, and Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949.

The Crocker Case involved the question whether Crocker and his cotrustees were taxable as an "association" or as "trustees" under the Federal Income Tax Law of 1913. The facts were as follows: A Maine corporation which owned eight paper mills conveyed seven of them to a Massachusetts corporation in exchange for all the stock of that company. The eighth mill was leased to the Massachusetts corporation for a long term. The stock received by the Maine corporation, together with the eighth mill, subject, of course, to the leasehold, was then transferred to Crocker and others, as trustees, in trust for the shareholders of the Maine corporation. The trustees issued certificates of beneficial ownership to these shareholders, and the Maine corporation thereupon was dissolved.

The declaration of trust gave the trustees unlimited discretion to use any funds in their hands for the repair or development of the property held by them, or for the acquisition of other property. The beneficiaries were without control in the premises, except that, with their consent, the trustees could modify the terms of the trust instrument, fill vacancies in their number, or increase their compensation, which the declaration of trust had limited to an amount not exceeding 1 per cent. of the gross income of the trust.

The trust instrument did not expressly mention the shares of stock, but the trustees held the same, collecting such dividends as accrued thereon. The function of the trustees was not to manage the mills, but simply to collect the rents and income of such property as might be in their hands.

When these facts were subjected to analysis by the Supreme Court (249 U. S. 223, 39 S. Ct. 270, 271, 63 L. Ed. 573, 2 A. L. R. 1601), it was stated that "in Massachusetts this arrangement would be held to create a trust and nothing more," citing Williams v. Inhabitants of Milton, 215 Mass. 1, 102 N. E. 355. Mr. Justice Holmes said that neither the trustees nor the beneficiaries, nor all together, could be regarded as a joint-stock association, within the meaning of section 2, G (a) of the Income Tax Law of October 3, 1913 (38 Stat. 172), and that dividends upon the stock left with the trustees were not subject to extra tax imposed by that section. He then declared at pages 233, 234, of 249 U. S., 39 S. Ct. 270, 271, 63 L. Ed. 573, 2 A. L. R. 1601, that "it would be a wide departure from normal usage to call the beneficiaries here a joint-stock association when they are admitted not to be partners in any sense, and when they have no joint action or interest and no control over the fund. On the other hand, the trustees by themselves cannot be a joint-stock association within the meaning of the act unless all trustees with discretionary powers are such, and the special provision for trustees in D is to be made meaningless. We perceive no ground for grouping the two—beneficiaries and trustees—together, in order to turn them into an association, by uniting their contrasted functions and powers, although they are in no proper sense associated. It seems to be an unnatural perversion of a well-known institution of the law."

Under the specifications of this decision, the Ittleson trust is not an association which was lawfully subject to taxes which are here sought to be recovered. Here, as in the Crocker Case, the trustees were vested with complete and comprehensive power. There is a similar absence of control upon the part of the beneficiaries.

But subsequent to the decision from which quotation has just been made, the character of the Crocker trust was radically changed. As thus altered, it, together with the Hecht Real Estate Trust and the Haymarket Trust, engaged the attention of the Supreme Court

in the case of Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949. It appears that the Crocker declaration of trust had been modified so as to empower the trustees to surrender the stock of the Massachusetts corporation in exchange for its entire property, and to carry on the paper business theretofore conducted by that company. Pursuant to this authorization, the trustees had taken over and were carrying on an extensive paper manufacturing business. Other changes which had occurred in the character of the trust led the trustees to admit that the trust was now an association within the statutes. This was clearly so under the test enunciated in the first Crocker Case. But, in considering the questions raised as to the characteristics of the Hecht Real Estate Trust and the Haymarket Trust, the Supreme Court, it would seem, made some departure from its pronouncements in the original Crocker decision. In the later adjudication, the court employed the following language, at page 157 of 265 U. S., 44 S. Ct. 462, 467, 68 L. Ed. 949:

"The word 'association' appears to be used in the Act in its ordinary meaning. It has been defined as a term 'used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise.' * * *

"We think that the word 'association' as used in the Act clearly includes 'Massachusetts Trusts' such as those herein involved, having quasi-corporate organizations under which they are engaged in carrying on business enterprises."

The court then went on to distinguish the situation confronting it from that which was present in the Crocker Case. The points of difference were, first, that the Income Tax Act of 1913 was there under consideration, and it "did not show a clear intention to impose upon the trustees as an 'association' a double liability in reference to the dividends on stock in the corporation that itself paid an income tax, when considered as 'trustees' they were by another provision of the Act exempt from such payment"; and, second, that the trustees in that case "were, in substance, merely holding property for the collection of the income and its distribution among the beneficiaries, and were not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business."

Finally the court said, at page 161 of 265 U. S., 44 S. Ct. 462, 468, 68 L. Ed. 949:

"It results that Crocker v. Malley is not an authority for the broad proposition that under an Act imposing an excise tax upon the privilege of carrying on a business, a Massachusetts Trust engaged in the carrying on of business in a quasi-corporate form, in which the trustees have similar or greater powers than the directors in a corporation, is not an 'association' within the meaning of its provisions.

"We conclude, therefore, that when the nature of the three trusts here involved is considered, as the petitioners are not merely trustees for collecting funds and paying them over, but are associated together in much the same manner as the directors in a corporation for the purpose of carrying on business enterprises, the trusts are to be deemed associations within the meaning of the Act of 1918; this being true independently of the large measure of control exercised by the beneficiaries in the Hecht and Haymarket Cases, which much exceeds that exercised by the beneficiaries under the Wachusett Trust."

Under the opinion from which the foregoing excerpts have been quoted, there appear to be three elemental requisites to a trust which, under the capital stock tax statutes, is to be regarded as an "association": (1) It should have a "quasi corporate form"; (2) its trustees should be "associated together in much the same manner as the directors in a corporation"; and (3) the trustees must be engaged in carrying on a business.

The perplexing problem of applying the foregoing criteria, and those which were stated in the original Crocker Case, which has not been overruled, to particular facts, has arisen in a great number of suits in the lower federal courts, and before the Board of Tax Appeals. See collection of cases in note on Taxation of Business Trusts, 42 Yale Law Journal, 270. No reconciliation can be made of all of the reasons advanced for decisions in the various opinions that these tribunals have expressed. Actually, however, trusts have been held to be taxable as "associations" wherever they carried on active commercial enterprises. United States v. Neal, 28 F.(2d) 1022 (C. C. A. 1) cert. den. 278 U. S. 659, 49 S. Ct. 250, 73 L. Ed. 567; Little Four Oil & Gas Co. v. Lewellyn, 35 F.(2d) 149 (C. C. A. 3); Trust No. 5833, Security-First National Bank v. Welch, 54 F. (2d) 323 (C. C. A. 9); Tulsa Mortgage Investment Co. v. Commissioner, 21 B. T. A. 735; Mary L. Dutton v. Commissioner, 18 B. T. A. 1151; Rochester Theatre Trust Estate v. Commissioner, 16 B. T. A. 1275; E. A.

Landreth Co. v. Commissioner, 11 B. T. A. 1; Anderson Steam Vulcanizer Co. v. Commissioner, 6 B. T. A. 737. The only trusts engaging in business activity, which have not been classified as "associations," have been those formed for the liquidation of concerns or estates, White v. Hornblower, 27 F.(2d) 777 (C. C. A. 1); Blair v. Wilson Syndicate Trust, 39 F.(2d) 43 (C. C. A. 5); Gonzolus Creek Oil Co. v. Commissioner, 12 B. T. A. 310, and real estate trusts, where it was deemed that the trustees were merely holding property for the collection of income, Landsdowne Realty Trust v. Commissioner, 50 F. (2d) 56 (C. C. A. 1); Fisk v. United States (D. C.) 60 F.(2d) 665, and were not actively engaged in managing the property or buying and selling real estate. See C. W. Cowell Co. v. Commissioner, 21 B. T. A. 1274. Cf. Tyson v. Commissioner, 54 F.(2d) 29 (C. C. A. 7). Apparently the judicial emphasis has been placed upon the third element of the test set forth in the Hecht Case, namely, that the trustees be engaged in carrying on a business, as distinguished from winding up a business or merely holding property and receiving and distributing its income. The question of whether the trust had a "quasi corporate form" or whether the directors were associated together like "the directors of a corporation" has been subordinated by the courts to the consideration of whether they should regard the control of the beneficiaries over the trustees, or the business activities of the trustees, as the decisive consideration. Results have been reached on both theories. See, for example, White v. Hornblower, supra, in the First Circuit, where there was no control in the beneficiaries and the purpose of the trust was to liquidate a business. The majority of the court there held that the trust was not an association, because its function was not to carry on a business enterprise, but to bring about its liquidation. Bingham, J., concurred on the ground that the organization under analysis was a strict trust under Massachusetts law, and not an association; the beneficiaries having no control over the actions of the trustees. On the whole, it would appear that the weight of authority has regarded the business activity of the trustees as the controlling factor. See opinions in cases cited above.

The case of United States v. Neal, supra, in the Circuit Court of Appeals for the First Circuit, to which the Supreme Court denied certiorari, can be explained only on the "business activity" theory. There the District Court had held that the trust therein involved was not an "association," because it was an express trust and not an association under Massachusetts law; the beneficiaries of the trust having no control over the activities of the trustees. The Court of Appeals reversed this decision, per curiam, on the authority of White v. Hornblower, supra. The opinion of the court in that case had definitely stated at page 778 of 27 F.(2d): "The measure of control over the trust vested in the beneficiaries does not seem to be the determining factor, but rather whether the trustees are conducting a business for profit or gain." The Neal Case therefore clearly held that a trust constituted an "association" even where the beneficiaries had no control, if the trustees were engaged in business for profit.

That the trustees in the instant case were engaged in business for profit admits of little doubt. Their activities consisted in some buying and selling of securities, and the lending of money at interest, in addition to receiving the income from the trust properties and investing, reinvesting, and distributing the same. The trust was admittedly conducted as a continuing business. It was not engaged in liquidating a business or estate. It was not acting merely as a passive conduit to receive money and pass it along to the beneficiary. It was continually making loans in large amounts. The fact that the number of stock transactions were relatively few does not obviate the fact that the trust was alive and functioning as a business enterprise; and, under the "business activity" test of the Hecht and Neal Cases, it was an "association." The fact that the beneficiary under the terms of the trust agreement has no control over the action of the trustees is not decisive. As pointed out in White v. Hornblower, supra: "The powers of the certificate holders, and the effect of the trust deed—i. e., whether it constitutes a partnership or a strict trust—are significant only as they tend to show whether what the interested parties did amounted to forming themselves into an association for carrying on a business enterprise in quasi corporate form for profit or gain."

The Neal Case makes it clear that a trust may be deemed an association even where the beneficiaries have no control over the trustees. As a practical matter, this lack of control is a fiction in the present case, since the sole beneficiary, who founded the trust, is one of the three trustees, and admittedly, he dictates their actions and policies.

In addition, the following corporate advantages were secured by the trust, without incorporation: The trustees can do business

in the name of the trust; they can sue or be sued as an entity under Massachusetts law; there is no individual liability upon the certificate holders; they are not liable to be called upon to put up additional capital; the trust does not terminate upon the death of a shareholder; the participation shares are transferable; and preferred shares have preference on dissolution.

These characteristics show that the trust in suit possesses the "quasi corporate form" referred to in the Hecht Case, in sufficient degree for it to be classified as an association when it engages in business activity.

This business activity of the trustees must also be considered in connection with the question whether the trust was "doing business" within the meaning of the statutes. Upon this point, the activities of the trustees need not be reiterated. The extent of the activity required for this latter purpose appears to be much less than that which must be found in a business trust in order for it to be classified as an "association." If the corporation or association is doing more than acting as a passive holder of property or a conduit to carry over profits to persons entitled to them, it is "doing business" within the meaning of the statute. International Salt Co. v. Phillips, 274 U. S. 718, 47 S. Ct. 589, 71 L. Ed. 1323, reversing, per curiam (C. C. A.) 9 F.(2d) 389; Edwards v. Chile Copper Co., 270 U. S. 452, 455, 46 S. Ct. 345, 70 L. Ed. 678; Argonaut Consolidated Mining Co. v. Anderson, 52 F.(2d) 55 (C. C. A. 2), cert. den. 284 U. S. 682, 52 S. Ct. 200, 76 L. Ed. 576. The trust in suit was clearly "doing business" within the definition of the scope of that term in the foregoing cases.

Defendant's motion for a directed verdict is granted.