## TYSON et al. v. COMMISSIONER OF INTERNAL REVENUE.
### Nos. 4944–4947.

Circuit Court of Appeals, Seventh Circuit.
Dec. 15, 1933.
Rehearing Denied Feb. 6, 1934.

KixMiller, Baar & Hoffman, of Chicago, Ill. (Arnold R. Baar and Arthur R. Foss, both of Chicago, Ill., of counsel), for petitioners.

Pat Malloy, Asst. Atty. Gen., and Sewall Key and Morton K. Rothschild, Sp. Assts. to Atty. Gen. (E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., C. R. Marshall, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for respondent.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

Petitioners who are the trustees of the Chicago Real Estate Trust filed their income tax returns, as fiduciaries, for the five fiscal years ending June 30, 1925, to 1929. The Commissioner found that they were taxable as an association under the provisions of section 2 (a) (2) of the Revenue Acts of 1924 and 1926, 26 USCA § 1262 (a) (2), and section 701 (a) (2), Revenue Act of 1928, 26 USCA § 2701 (a) (2), and Treasury Regulations 65, arts. 1502 and 1504, relating to the Revenue Act of 1924, and similar provisions relating to the Revenue Acts of 1926 and 1928, promulgated in accordance with section 1001 of the Revenue Act of 1924 (26 USCA § 1245 and note) and an identical provision of the Revenue Act of 1926, § 1101 (26 USCA § 1245 and note) and Revenue Act 1928 § 62 (26 USCA § 2062). These provisions will be set forth hereinafter. The Board of Tax Appeals sustained the deficiencies asserted by the Commissioner, and from its decisions these appeals are had. The principal question involved is, therefore, whether petitioners constitute a trust or an association according to the definitions above referred to.

There have been a number of cases involving this same question of whether a particular entity is taxable as a trust or as an association.[1] The trend of these decisions seems

[1] See Tyson et al. v. Comm. (C. C. A.) 54 F.(2d) 29; Gardiner v. U. S. (C. C. A.) 49 F.(2d) 992; Little Four Oil & Gas Co. v. Lewellyn (C. C. A.) 35 F.(2d) 149; Lansdowne Realty Trust Co. v. Comm. (C. C. A.) 50 F.(2d) 56; Lucas v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65; Fisk et al. v. U. S. (D. C.) 60 F. (2d) 665; Trust No. 5833, Security-First Nat. Bank v. Welch (D. C.) 50 F.(2d) 613.

to be to look to the actual activities of the entity first, rather than to its form or possible powers. The first question then is, were the petitioners associated together for the purpose of carrying on a business enterprise, or were they merely holding property for the collection of the income and its distribution among the beneficiaries of the trust?

In 1925, the petitioners owned three buildings, all under long term net rental leases. Construction of one of them had been completed during the first of the taxable years. The trustees had purchased the land on which this was erected already subject to a contract for a lease which had specified the type of building and the main provisions of the rental. The architect's plans for the building had already been drawn and petitioners had adopted those plans practically without change. The entire cost of land and building was about $2,500,000, or approximately equal to the total amount of the trust receipts outstanding which had been $2,500,-000 at least as far back as 1902. At the close of the last taxable year, June 30, 1929, the total value of the real estate holdings was $3,815,630.57, and those holdings were entirely free from encumbrance.

During the taxable years petitioners had owned securities valued at $520,292, but these had been sold to pay off the mortgage on their last building. These securities had been purchased for the purpose of investing the depreciation and contingency funds which the trustees were authorized to set aside. The evidence showed that during the thirty-nine years of their organization the trustees had owned five other pieces of real estate in addition to the three owned during the taxable years. These five pieces had been disposed of prior to the taxable years.

The case of Tyson et al. v. Commissioner, 54 F. (2d) 29, 31, was decided by this court shortly before the decisions were handed down by the Board in these cases, and the Board discussed it at length in its opinion. In that case the trustees owned a single piece of property which was already subject to a long term net rental lease at the time they purchased it. No other property was ever acquired by them although the declaration of trust under which they were organized permitted other activities. Upon the sale of their single piece of property their trust was dissolved. This court in holding that the trustees should be taxed as fiduciaries rather than as an association stated, "In short, the investment was one which provided with rea-sonable certainty for a sure and fixed income *without either care or supervision.*" (Italics ours.) Using this as a test, we think it can not be said that petitioners in the case at bar are simple fiduciaries. It seems obvious that the duties connected with their investments involved considerable care and supervision. When they found no building suitable for their purposes they put one up. They determined what part of the gross income up to ten per cent. of it should be withheld from distribution for depreciation and contingency funds and then invested those funds. They exercised the authority granted by the trust agreement to dispose of properties, selling five during the period of their existence. They placed a mortgage on their last acquired piece of property, paying it off within the five taxable years here involved. Although all the buildings were leased under net rental arrangements whereby the tenants paid all the expenses of maintenance, insurance, taxes and special assessments, nevertheless there were expenses incurred amounting to an average of about $20,000 a year in addition to legal and miscellaneous expenses of over $2,000 a year in each of the taxable years for which balance sheets and income statements were put in evidence. These are rather substantial expenses for an entity which, in order to bring itself within the definition of a trust for taxing purposes, must be practically self-operating, "without care or supervision." They employed as their agent an experienced real estate management firm of which one of their number was a member. That firm collected the rents, depositing them in the trustees' bank account and accounting to them. It also saw to it that taxes were paid by the lessees. With all these facts present, surely it cannot be said that the trustees were a mere conduit through which the income from the properties passed for distribution to the receipt holders practically without activity on their part. We therefore conclude that the trustees were engaged in sufficient activities to warrant our holding that they were carrying on a business enterprise, hence taxable as an association.

Petitioners, however, argue that even if it were held that they were carrying on a business, they would be properly subject to tax as a corporation only if in addition they were substantially similar to a corporation in other essential characteristics of form and procedure.

Petitioners operated under an Agreement and Declaration of Trust drawn up in

1890, the significant provisions of which are set forth marginally as amended in 1904.[2]

This appears to provide for the organization of a typical Massachusetts trust, probably chosen as to form for the reason that at that time corporations were not able to engage in the real estate business in Illinois because of a statute which greatly restricted their right to hold title to real estate. Hence the fact that the entity called itself a trust from the time of its organization is of little or no importance in the present discussion. While the taxing statute does not in terms refer to this type of trust, it does define corporations to include associations. Section 2 (a) (2) of Revenue Acts of 1924 and 1926, 26 USCA § 1262 (a) (2); section 701 (a) (2), Revenue Act of 1928, 26 USCA § 2701 (a) (2). A similar statute relating to the excise tax has been held to be applicable to business trusts provided they are organized in quasi-corporate form for the conduct of a business enterprise. Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949. The statute also gives the Commissioner authority with the approval of the Secretary of the Treasury to prescribe all needful rules and regulations for the enforcement of the Act. Section 1001 of the Revenue Act of 1924, and

---

[2] "We, the subscribers, hereby agree to and with each· other, and in consideration of our mutual agreements, as follows:

"1. We agree to pay, at any time within two years from the date hereof, to the trustees hereunder, the amounts set against our names respectively; * * * but they shall not require any payment until the total amount subscribed amounts to one million dollars, but when the subscription shall amount to one million dollars the trustees may call it in, as hereinafter provided, and invest the same as hereinafter provided. * * *

"4. Said trustees shall use all money paid to them as such, except as hereinafter provided, for the purchase of real estate, improved or unimproved, and for the improvement of real estate in the City of Chicago * * * and all real estate so purchased shall be conveyed to them in joint tenancy as trustees hereunder.

"5. Said trustees shall have * * * absolute control over and disposal of all real estate held by them * * * including the power to sell for cash or credit at public or private sale, to mortgage with or without power of sale, to lease or hire, for improvement or otherwise, for a term beyond the possible termination of this trust or for any less term, to let, exchange, to release and to partition. But the indebtedness of said trust shall never exceed forty per cent. of the amount of subscriptions actually paid in at par. This provision and restriction as to mortgages shall not, however, affect the title of any mortgagee, and no purchaser or mortgagee shall be liable for the application of money paid or lent. In all leases and mortgages it shall be stipulated that neither the receipt-holders nor said trustees shall be personally liable thereon.

"6. Said trustees may set aside not more than ten per cent. of the annual gross income, for a contingent fund, or sinking fund, or both. They shall divide the net income of the property held by them under this trust among the receipt-holders annually, or oftener, at their discretion, and their decision as to what constitutes net income from time to time shall be final. Said contingent or sinking fund and any money waiting investment may be put at interest or invested and re-invested in interest-bearing securities, by said trustees, at their discretion, and said contingent or sinking fund, or any part thereof, may be at the discretion of said trustees paid over to the receipt-holders.

"7. The trustees may, from time to time, hire suitable offices * * * appoint such officers, attorneys and agents, * * * as they may think best, fix their compensation and define their duties. * * *

"And the trustees may incur and pay out of the trust property, such other expenses as the proper execution of this trust shall seem to them to require.

"The compensation of the Board of Trustees shall not at any time exceed five per cent. of the gross income of the property held by them under this trust, and, within said limit, shall be fixed by themselves. It is understood that the compensation of the trustees for their services as such shall be distinct and separate from their compensation for services they or any of them may render as attorneys, agents, or in any other capacity than strictly as trustee, to the Trust Estate.

"8. Said trustees shall issue receipts in such form as they shall deem best, for each sum of one thousand dollars or multiples thereof, paid to them under this agreement; but no receipt shall be issued for any less sum than one thousand dollars. * * *

"10. Said trustees may, from time to time, at their discretion, invite and receive further subscriptions for the purpose of increasing the capital of the trust, provided that the capital shall never be increased beyond five million dollars. * * *

"11. No assessment shall ever be made upon the receipt-holders.

"12. The books of said trustees shall always be open to the inspection of receipt-holders.

"13. If at any time any of the trustees * * * shall die, or shall disclaim '* * * then * * * the trust hereby created shall in nowise fail * * * but the remaining trustees or trustee shall continue to discharge all the duties * * * and such remaining trustees or trustee shall, within the space of six months * * * make and file in the office of the recorder of Cook County,· Illinois, their or his certificate in writing * * * reciting such death, disclaimer, * * * and appointing a successor * * * and no formal conveyance shall be necessary so to divest and vest the trust estate.

"14. At and upon the expiration of twenty years, after the death of the last survivor of the following named persons * * * or at such earlier time as three-fourths in value of the receipt-holders may, by an instrument in writing * * * said trustees shall terminate this trust by selling all property then held by them, as such, and dividing the proceeds among the receipt-holders.

"Provided, however, that upon the request of three-fourths in value of the receipt-holders in writing, signed, acknowledged and recorded as above provided, said trustees may, if it seems to them judicious so to do, convey the trust property to new or other trustees. * * *

"15. For all acts under this instrument and otherwise, said trustees shall be responsible only for a willful breach of trust, and each shall be responsible only for his own acts.

"16. Meetings of the receipt-holders may be called by any two of the trustees, and shall be called upon the written request of receipt-holders holding not less than three hundred thousand dollars ($300,000) or more, in amount of receipts. The receipt-holders may, for their own government, pass by-laws and elect necessary officers, and may instruct the trustees hereunder in any manner not inconsistent with the powers herein or hereafter given said trustees, or with the acquired rights of third parties."

section 1101 of the Revenue Act of 1926 (26 USCA § 1245 and note), and section 62 of the Revenue Act of 1928 (26 USCA § 2062). Under this authority, the Commissioner promulgated articles 1502 and 1504 of Regulations 65[3] and 69 (with amendments), articles 1312 and 1314, Regulations 74, including common law trusts in the associations to be taxed as corporations, provided they were doing business in an organized capacity. Such regulation, being reasonable and appropriate for the enforcement of the provisions of the taxing act is binding and has the effect of law. United States v. Morehead, 243 U. S. 607, 37 S. Ct. 458, 61 L. Ed. 926. Moreover, since this regulation was promulgated, Congress has re-enacted the statute without material change, thereby approving in effect the administrative construction placed upon it. Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 70 L. Ed. 457; National Lead Company v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; Burnet v. Brooks, 288 U. S. 378, 53 S. Ct. 457, 77 L. Ed. 844, 86 A. L. R. 747.

█ That the organization of the trustees was of a very loose and informal character we think is not sufficient to take them out of the classification contemplated by the administrative regulations cited. Even though no formal meetings of the trustees were held, they had adopted a regular practice for the administration of their trust. At regular in-

---

[3] "Art. 1502. Associations and joint-stock companies include associations, common law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the shareholders * * * or where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization. * * *"
"Art. 1504. *Association Distinguished from Trust.* —Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged, either by themselves or in connection with the beneficiaries in the carrying on of any business, and the beneficiaries have no control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust, and the beneficiaries thereof will be subject to tax as provided by section 219 and by articles 341-347. If, however, the beneficiaries have positive control over the trust, whether through the right periodically to elect trustees or otherwise, an association exists within the meaning of section 2. Even in the absence of any control by the beneficiaries, where the trustees are not restricted to the mere collection of funds and their payment to the beneficiaries, but are associated together with similar or greater powers than the directors in a corporation for the purpose of carrying on some business enterprise, the trust is an association within the meaning of the statute."

tervals the trustees living in Chicago would go over the accounts which were kept in the offices of their agent, and determine what dividends should be paid to the receipt holders. They would then prepare a dividend resolution and send it to the trustees who lived in Boston for their approval. The various leases on properties owned by the trustees were signed by all of them individually, with some designation of their trust capacity. Where matters arose which in the judgment of their agent needed to be considered by all of the trustees, they were handled by correspondence. Although the receipt holders never exercised their right to call meetings, they received printed annual statements shortly after the close of each fiscal year, and were thus kept in touch with the activities of the trust. The receipts evidencing their beneficial interest in the trust were engraved ones with transfer forms on the back. The trustees employed a regular transfer agent to take charge of and record all transfers of receipts. It is true that neither the trustees nor the receipt holders ever drew up a code of rules or by-laws for the government of the trust, but such action seems entirely unnecessary in view of the comprehensive nature of the trust agreement under which they were organized in the first place. We think that these facts are sufficient to warrant our classifying petitioners as a quasi-corporate organization in form and procedure and as such taxable as a corporation.

Petitioners raised a further question as to the admission of certain evidence elicited on cross-examination which they argued was outside the scope of the direct examination. Their claim is that the direct examination was limited to the last four taxable years, namely from June 30, 1925, to 1929, hence respondent had no right to cross-examine as to the first taxable year, June 30, 1924, to 1925, nor as to the period preceding the taxable years. The evidence in question had to do with the fact of the construction of the building on the last piece of property acquired by petitioners, and also with the fact of the sale of the five other pieces of property owned by them at various times. However, the record discloses that on direct examination, the witness referred to his early connection with the trust as far back as 1892, and in several instances, referred to the period beginning June 30, 1924. We think that these instances were enough to open up the entire period for cross-examination. Even if this evidence were incompetent, however, it was not prejudicial, and there was substantial evidence

aside from it upon which the Board based its decisions.

Petitioners also object to a finding by the Board that the other two of the three buildings now owned by them were built by them. They base their objection on the ground that there is absolutely no evidence in the record as to the building of one of them, and that the question which brought forth the fact as to the other was later withdrawn. The record shows that witness testified on cross-examination, without objection, "During the years in which I was associated with the Chicago Real Estate Trust, the part of the Monadnock Building which we acquired was built. It was just completed the year I came back here, in 1893. * * * The Cable Building was built about five or six years later, I think. Somewhere about 1898." The natural inference to be drawn from these two statements, we think, is that both buildings were erected by petitioners. However, even if this be not true, we think it is not of such material importance as to warrant a reversal, since the Board did not place any substantial reliance upon these two facts, but grounded its decisions upon many other facts which it appears to have considered of more importance.

The Decisions of the Board are Affirmed.