**LUCAS, Commissioner of Internal Revenue, v. EXTENSION OIL CO.**

**No. 5936.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 18, 1931.

G. A. Youngquist, Asst. Atty. Gen., J. Louis Monarch and A. H. Conner, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Percy S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

J. M. McMillin, of Dallas, Tex., for respondent.

Before BRYAN and FOSTER, Circuit Judges, and HUTCHESON, District Judge.

HUTCHESON, District Judge.

The Extension Oil Company, a name under which certain tracts of land had been trusteed, drilled 'upon for oil, sold, and the proceeds from the drilling and sale of which, had been distributed within the year to the unitholders under a declaration of trust, having through its trustees made a fiduciary return of income for the year 1922, such return was by the Commissioner disallowed on the ground that it was an association, and that it should file its return and be taxed as a corporation.

Upon appeal the Board of Tax Appeals, finding and declaring that the Extension Oil Company was not "an, association," but .a taxable trust, and that it had properly made a fiduciary return, reversed the Commissioner.

This ruling the United States seeks to review, presenting the single question, "Was the taxpayer a trust, and taxable as such, or was it an association, taxable as a corporation, within the meaning of the Revenue Act of 1921, which contains the provision for the taxation of both trusts and corporations, taxes corporations which are 'doing business' as such, and provides (Revenue Act 1921, 42 Stat. 227, c. 136, § 2) : 'The term "corporation" includes associations, joint-stock companies, and insurance companies'?"

It is at once evident that this is one of those cases where "As long as the matter to be considered is debated in artificial terms there is a danger of being led by a technical definition to apply a certain name, and then to deduce consequences which have no relation to the grounds on which the name was applied." Guy v. Donald, 203 U. S. 406, 27 S. Ct. 63, 64, 51 L. Ed. 245, and that its correct decision will depend upon a complete apprehension and recognition of the realities of the case, through an appreciation and understanding of the facts which make it up; and that this is so both as to the question of whether the particular taxpayer is an association, or a trust, and whether it is doing business, a review of the many decisions in the Supreme and inferior courts will show.

Relating to the question of doing business may be consulted, Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Zonne v. Minneapolis, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill Ry. Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842; United States v. Emery, 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825; Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct.

201, 61 L. Ed. 460; Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 70 L. Ed. 678. And to the question of association or trust, Crocker v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949; Burk Waggoner v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183. See, also, Hemphill v. Orloff, 277 U. S. 537, 48 S. Ct. 577, 72 L. Ed. 978. While cases discussing both features are White v. Hornblower (C. C. A.) 27 F.(2d) 777; Neal v. U. S. (D. C.) 26 F.(2d) 708; Id. (C. C. A.) 28 F.(2d) 1022; Little Four Oil & Gas Co. v. Lewellyn, (C. C. A.) 35 F.(2d) 149; Harmar Coal Company v. Heiner (C. C. A.) 34 F.(2d) 725, 726; Nunnally Inv. Co. v. Rose (D. C.) 14 F.(2d) 189; Burk-Waggoner v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183.

Beyond the general statement that "the word 'association' appears to be used in the act in its ordinary meaning. It has been defined as a term used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise," Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, none of these cases attempt any generalized effort at more complete definition. Each of these cases grounds its result upon the controlling facts, and makes it clear that reality, and not fiction, must in each case determine whether the tax is or is not properly laid.

The facts, stripped of all nonessentials, and simply stated, are:

Five men, owning an oil and gas lease which was about to lapse unless drilled, in order to realize on the property trusteed the land in the name of the Extension Oil Company, and in the declaration of trust they named four of the five as trustees, declared "the trust estate hereby created shall be divided into 400 units," provided for the sale of the units, the drilling on the property by the Extension Oil Company, gave the trustees full power to handle the property, collect the rents, sell and dispose of it, and particularly provided that the trustees should collect all revenue from the trust estate, as well as the proceeds from the sale of any of the trust property and distribute it to the unitholders.

The trust instrument authorized the trustees to fill all vacancies in the office of trustees and amend the terms of the trust. It provided that the unitholders should have no vote, nor any control over the trust or the

trustees, and that absolute control and discretion was vested in the trustees to manage and control the trust according to their own best judgment.

It also provided that the unitholders should have no interest by virtue of their certificates in the corpus of the estate, but merely the right to participate in the earnings and profits of the trust estate when realized in money.

Of the four hundred units less than fifty were sold to others than the creators of the trust.

After its creation, in May, 1922, the trust drilled a well, produced oil from which some returns were derived, and in January, 1923, it sold its properties to the Magnolia Oil Company for the sum of $200,000, and thereafter the trustees ceased the active management of the trust, and its affairs were wound up by the bookkeeper, Holmesly.

In July, 1923, Holmesly and one of the trustees, after consulting the chief clerk in the office of the collector of internal revenue at Austin, Tex., and under his advice, made a return as fiduciary on form 1041.

The trustees and unitholders at all times considered their organization as a joint venture, operated by agents or trustees, and as a distributable trust. No returns were filed for the organization except the fiduciary return above referred to, but each unitholder reported in his individual tax report the amount distributed to him by the trust, no business of any kind having ever been proposed or undertaken except the realization upon the lands which they owned at the time they created the trust.

The Board of Tax Appeals in a careful opinion, balancing the resemblances which petitioner in its structure bore to a trust, against those which it bore to a corporation, and considering also the facts as to what the petitioner actually did, found as a fact and concluded as a matter of law that petitioner was not an association within the meaning of the taxing act, "voluntarily organized to transact business under corporate forms and transacting such business."

With this opinion we agree, for we think it plain that whether the matter be decided from the standpoint of an analysis and balancing of resemblances to corporate forms, in the light of what use the petitioner made of them, as was done by the board, or whether, these resemblances aside, the matter is decided, not upon the basis of the powers potentially held by the petitioner, but of those actually used by it, upon what it did, rather than upon what it could do, a regard for the realities of the case before us permits no other decision.

To bring petitioner under the terms of the statutes invoked by the government here would be a surrender to formalism, and to that method of decision until recently more characteristic of code countries than of ours, which looks at the law as but a body of directions given by the government to its officials.

This point of view tends, through generalization, to extend statutes beyond their meaning and context, and thereby to make the law increasingly more rigid, less responsive to the circumstances of the particular case to which the law is to be applied, and wanting in that "æquitas," the essential principle of correct interpretation, without which it is impossible to find the true intention of the law.

Believing that it would be a wresting of judgment to hold under the facts of this case that respondent was within the statute invoked doing a corporate business, and subject to be taxed as a corporation, the petition for review of the judgment of the Board of Tax Appeals is denied, and the judgment is affirmed.