COMMISSIONER OF INTERNAL REVE-
NUE v. BROUILLARD.

SAME v. SHEPHERD SYNDICATE.

SAME v. PRYOR & LOCKHART DEVELOP-
MENT CO.

Nos. 888, 945, 951.

Circuit Court of Appeals, Tenth Circuit.
April 4, 1934.

Walter L. Barlow, of Washington, D. C. (Pat Malloy, Sewall Key, J. P. Jackson, and John H. McEvers, all of Washington, D. C., on the brief), for petitioner.

J. C. Campbell, of Charles City, Iowa, for respondent H. E. Brouillard.

George M. Morris, of Washington, D. C. (Allen H. Gardner, of Washington, D. C., on the brief), for respondents Shepherd Syndicate and Pryor & Lockhart Development Co.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

These cases involve the status of Iowa-Burk Syndicate, Shepherd Syndicate, and Pryor & Lockhart Development Company for income tax purposes. The material facts are:

No. 888.

During September, 1918, J. C. Campbell and J. M. Burns, of Charles City, Iowa, and R. E. Wade and H. E. Brouillard, of Wapanucka, Okl., acquired an oil and gas lease covering ten acres of land situated in the Burkburnett oil field in Texas, at a cost of $20,000. Wade and Brouillard operated a small bank in Wapanucka. Burns conducted a grocery in Charles City, and Campbell was an attorney there. Burns, Campbell, and Brouillard were relatives. None of the four had previous experience in the oil business. Current reports of an oil boom caused them to decide early in 1919 to develop their lease. They were without sufficient funds to drill a well. They decided to sell a half-interest in their lease to some of their friends for the purpose of raising

the necessary sum. In order to effect the sale, steps were taken to form a syndicate. The syndicate or organization was effected by means of a written instrument denominated as an "Agreement," the material parts of which were that the four original lease owners would convey an undivided one-half interest in the lease to C. L. Holden, J. C. Campbell, and R. E. Wade as trustees, with the understanding that the one-half they retained should be valued at $30,000. The interest conveyed to the trustees was to be valued at $30,000 and was to be sold by them. The interest each purchaser in the venture received was to be in that proportion which the amount he contributed bore to $60,000, and he was to receive a certificate to that effect. The trustees were to issue receipts for such interests, and were to furnish a surety bond in the sum of $30,000. When the funds were raised, a meeting of the interest holders was to be called for the purpose of electing new trustees. The new trustees were authorized to develop the lease, collect all money from the proceeds of the venture, and distribute the same, borrow money on the property, and drill all wells necessary for complete development.

Pursuant to the agreement, about one hundred and ten persons contributed to the fund. Some, but not all, received certificates. No meeting of the interest holders was called or held to select trustees to manage the lease. Burns succeeded Holden as trustee by virtue of selection by "some of the certificate holders." Wade acted as manager without objection, although he was not selected thereto. No president, secretary, treasurer, or other officer was elected and no formal meetings of the trustees or stockholders were held, except one to determine whether the lease should be sold. Some certificate holders gathered occasionally, usually on a street corner, and discussed the venture. The certificates were not the subject of frequent barter or sale. There were a few sales and assignments. They usually occurred when an investor became financially distressed and a friend took part of his investment merely to aid him. No complete record of transfers was attempted to be kept on the books of the syndicate. The syndicate kept a set of books compiled by Wade which showed the names of the original contributors, their respective shares, and the disbursements of the organization. A bank account was maintained at times in the name of the trustees.

A well was drilled and oil struck in commercial quantities in June, 1919. Two additional wells were subsequently drilled. Wade borrowed the money for that purpose, most of it being obtained from certificate holders. The lease was operated until November, 1919, when an offer to purchase was received. Burns, Wade, and Campbell were unwilling to sell their interests if compelled to pay income tax as a corporation. They went to Washington, explained the situation to a representative of the Bureau of Internal Revenue, and were assured verbally that the enterprise was a joint venture and that no corporate tax would be assessed. Following that assurance, the sale was completed for the price of $300,000; all assets except a reserve of about · $40,000 were distributed among the shareholders, and the business of the organization terminated.

A partnership return was seasonably made. The Commissioner thereafter imposed a jeopardy deficiency assessment of income and excess profits tax in the sum of $142,-672.28, which included a penalty of 50 per cent., holding that the enterprise was an association taxable as a corporation under the relevant provisions of the Revenue Act of 1918 (40 Stat. 1057). Due to the fact that the syndicate had distributed all of its assets, except the reserve referred to, the Commissioner asserted a deficiency assessment for the taxable year 1919 against each distributee of assets as transferee in an amount equal to the proceeds received in the nature of a liquidating dividend. The Board of Tax Appeals reversed the action of the Commissioner. The case came here on petition to review that action so far as it relates to the respondent.

### No. 945.

In May, 1925, a partnership composed of Ralph J. Pryor and F. E. Lockhart, engaged in the business of buying and selling oil and gas leases, acquired a lease called the Shepherd lease, covering 320 acres of land situated in Greenwood county, Kan. Pryor and Lockhart, in June following, assigned to Henry Rosenthal and H. K. Beardmore —a partnership—an undivided one-half interest in the lease for one-half of its cost, and in March, 1926, the two partnerships sold an undivided one-half interest in it to Manhattan Oil Company, a corporation, for $25,000, the purchase price being paid in equal shares to the partnerships; that is, $12,500 to each of them. A 1/256 interest in the lease was assigned to a broker for negotiating the sale. After the sale, the members of the two partnerships decided to permit certain of their friends who had furnished financial assistance in a previous venture to share in the en-

terprise. In order to accomplish the desired purpose, Pryor, Lockhart, Rosenthal, and Beardmore conveyed their remaining $127/256$ interest to Pryor and Rosenthal as trustees under the terms of a trust indenture executed on May 1, 1926. The material provisions of the instrument were that the trustees should hold legal title to the property and manage it; issue bonds, borrow money, or mortgage the property for the purpose of development; employ labor, also counsel, and institute legal proceedings; declare dividends and call meetings of the share holders. They had full control of the trust res, and were to keep a record of all proceedings. A provision purported to exempt the shareholders from personal liability. Pursuant to the trust, about ten persons subscribed to the fund and received certificates of beneficial interests. They contributed no capital, but were charged $100 for each $1/300$ interest, and were credited with a proportionate interest in the $25,000 secured from the Manhattan Company. Any balances charged against them were deducted from their shares of the trust income.

Manhattan Oil Company developed the leasehold estate, drilled wells, pumped and sold the oil therefrom. It furnished the trustees monthly statements for their half of the expenses and remitted semimonthly one-half of the proceeds from the sale of oil. The exclusive duties of the trustees consisted of checking and paying accounts and distributing the dividends to the shareholders. Pryor, as trustee, attended to the business of the trust. There were no by-laws, minute books, officers, or seal. The beneficiaries did not attempt to control or direct the activities of the trustees. No meetings of the shareholders were called or held, and they did not inspect the books of the enterprise at any time. The trust filed fiduciary returns for the taxable period in controversy. The Commissioner determined that the entity was taxable as a corporation, and accordingly made deficiency assessments for the taxable years 1926, 1927, and 1928. The Board of Tax Appeals reversed the ruling, and held that the syndicate was taxable as a trust. This case likewise is here on petition to review.

### No. 951.

In 1918 F. E. Lockhart and Ralph J. Pryor formed a partnership for the purpose of buying and selling oil and gas leases on land situated in the mid-continent fields in Kansas. In 1923 the partnership acquired a lease known as the Derbyshire lease, covering 85 acres in Greenwood county, Kan. Producing wells were drilled on adjoining property during the ensuing year. The partners then decided to develop their lease. They did not have sufficient funds for that purpose. They decided to invite several of their friends to join them in the venture. In order to retain control and not be hampered with corporate procedure or the necessity of consulting several partners, a trust, called Pryor & Lockhart Development Company, was organized on July 1, 1924. By the terms of the trust agreement, Pryor was made trustee. The provisions of the trust were substantially the same as those detailed in case No. 945, except that there was only one trustee. On the following day the Derbyshire lease was assigned to the trustee in exchange for trustee's shares provided for in the trust agreement. Thereafter, about fifteen friends of Lockhart and Pryor purchased 68 per cent. of the total shares issued. The trustee then executed an agreement with Rosenthal and Beardmore, drilling contractors, for the drilling of oil wells on the lease. A cash consideration was to be paid for the first well. If it produced oil, the trustee was to buy the drilling equipment at an agreed sum. If oil was not found, the equipment should remain the property of the drillers. Under these terms the contractors drilled six wells between October, 1924, and July, 1925. Two were dry, but the other four produced oil continuously in commercial quantities.

Pursuant to an offer from Herbert Oil Company, a Texas corporation, the trustee in 1926 made an arrangement with the contractors to drill a well on the Herbert property. The material and equipment from the two dry wells were used in doing so. The well was dry. The contractors drilled a well on the property of G. V. Bason under a similar arrangement.

The oil obtained from the lease was sold to Skelly Oil Company and White Eagle Oil & Refining Company. Payment was received semimonthly, and, after retaining sufficient thereof for current expenses, the proceeds were distributed among the beneficiaries. The trust had no offices of its own; those of the partnership being used. The partnership employed a bookkeeper and stenographer in 1924 and 1925. It subsequently had a bookkeeper and a clerk. The business of the trust required the time of the employees of the partnership for about two days in each month. A superintendent and pumper were employed by the trust from 1924 to 1928. The trustee confined his activities to essentials in the development and operation of the Derbyshire lease and the full utilization of

the equipment acquired for that purpose. During all of the taxable period referred to, the trustee had exclusive charge and control of the affairs of the trust and consulted no one except Lockhart. There were no stockholders' meetings. There was no attempt on the part of the stockholders to exercise control over the venture. They never questioned the distributions or asked to see the books of the trust.

The trust filed a corporation return for the year 1925. Fiduciary returns were filed for the years 1926 and 1927. The trustee filed notice in 1929 of election to have the organization taxed as a trust for the years 1925, 1926 and 1927, as provided for in section 704 (b) of the Revenue Act of 1928 (26 USCA § 2704 (b). The Commissioner determined that at all times the enterprise was taxable as a corporation and imposed deficiency assessments for the years 1925 to 1928, inclusive. The Board of Tax Appeals reversed that determination. The case found its way here on review.

The taxes in question were assessed under the respective Revenue Acts of 1918, 1924, 1926 and 1928.[1] Different rates are provided in the several acts on the income of corporations from that of members of a trust. That difference gives rise to the controversy here. The statutes each define the term "corporation" as used therein to include associations, joint-stock companies, and insurance companies.[2] Pertinent treasury regulations promulgated under the different acts are substantially the same.[3] Identity of law and strong similarity of facts present a single question which is decisive of the cases. It is whether the entities were taxable as associations with the corporation rates applied, or as trusts.

The word "association," as used in the taxing legislation, should receive its ordinary

---

[1] Revenue Act of 1918, c. 18, § 230, 40 Stat. 1057 at 1075; Revenue Act of 1924, c. 234, § 230, 43 Stat. 253 at 282 (26 USCA § 981 note); Revenue Act of 1926, c. 27, § 230, 44 Stat. 9 at 39 (26 USCA § 981 note); Revenue Act of 1928, c. 852, § 13, 45 Stat. 791 at 797 (26 USCA § 2013).

[2] Revenue Act of 1918, c. 18, § 1, 40 Stat. 1057, 1058; Revenue Act of 1924, c. 234, § 2 (a) (2), 43 Stat. 253, 26 USCA § 1262 (a) (2); Revenue Act of 1926, c. 27, § 2 (a) (2), 44 Stat. 9, 26 USCA § 1262 (a) (2); Revenue Act of 1928, c. 852, § 701 (a) (2), 45 Stat. 791 at 878, 26 USCA § 2701 (a) (2).

[3] Regulation 45, promulgated under the Revenue Act of 1918: Art. 1501. Person.—The statute recognizes three chief classes of persons, to-wit. individuals, partnerships, and corporations. Corporations include associations, joint-stock companies, and insurance companies, but not partnerships properly so-called. A taxpayer is any person, trust, or estate subject to tax.

Art. 1502. Association.—Associations and joint-stock companies include associations, common-law trusts, and organizations by whatever name known, which act or do business in an organized capacity, whether created under and pursuant to State laws, agreements, declarations of trust, or otherwise, the net income of which, if any, is distributed or distributable among the members or shareholders on the basis of the capital stock which each holds or, where there is no capital stock, on the basis of the proportionate share or capital which each has or has invested in the business or property of the organization.

Art. 1504. Association distinguished from trust.—Where trustees hold real estate subject to a lease and collect the rents doing no business other than distributing the income less taxes and similar expenses to the holders of their receipt certificates, who have no control except the right of filling a vacancy among the trustees and of consenting to a modification of the terms of the trust, no association exists and the cestui que trust are liable to tax as beneficiaries of a trust the income of which is to be distributed periodically, whether or not at regular intervals. But in such a trust if the trustees pursuant to the terms thereof have the right to hold the income for future distribution, the net income is taxed to the trustees instead of to the beneficiaries. See section 219 of the statute and articles 341–347. If, however, the cestui que trust have a voice in the conduct of the business of the trust, whether through the right periodically to elect trustees or otherwise, the trust is an association within the meaning of the statute.

Articles 1501 and 1502 appear without substantial change and with the same numbers in Regulations 62 under the Act of 1921, 65 under the Act of 1924, 69 under the Act of 1926, and 74 under the Act of 1928. Article 1504 appears without substantial change in Regulation 62; in 65, 69 and 74 it was amended to make control by the beneficiaries immaterial; otherwise, unchanged in substance.

meaning. It signifies a body of persons united without a charter, but employing the methods, modes, and procedural forms of a corporation in the conduct of its business. Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949. The nature of the entity, that is, its dominant functions and attributes, determines whether it is an association. Hemphill v. Orloff, 277 U. S. 537, 48 S. Ct. 577, 72 L. Ed. 978. A joint-stock company or partnership conducting its business after the form and manner of a corporation may be taxed as an association, regardless of its status under the laws of the state in which it operates. Burk-Waggoner Oil Association v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183. In considering the functions and attributes of an entity for the purpose of determining whether it is an association or a trust, regard should be given to its actual activities instead of the permissive scope of operations. Gardiner v. United States (C. C. A.) 49 F.(2d) 992; Tyson v. Commissioner (C. C. A.) 54 F. (2d) 29.

■ Where an entity of this kind resembles a corporation in some respects and that of a partnership in others—that frequently being the case—the features of similarity should be compared and the marks of dissimilarity contrasted. The resemblances should be balanced. It should be determined by that method the one to which the enterprise is predominantly akin in the method, mode, and form of procedure in the conduct of its business. If it be a corporation, it falls within that category; if a partnership, it should be placed in that class and should be taxed accordingly. Tyson v. Commissioner, supra. In Lucas, Commissioner, v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65, 67, involving facts similar to those presented here, the court declared the applicable doctrine as follows:

"The Board of Tax Appeals in a careful opinion, balancing the resemblances which petitioner in its structure bore to a trust, against those which it bore to a corporation, and considering also the facts as to what the petitioner actually did, found as a fact and concluded as a matter of law that petitioner was not an association within the meaning of the taxing act, 'voluntarily organized to transact business under corporate forms and transacting such business.'

"With this opinion we agree, for we think it plain that whether the matter be decided from the standpoint of an analysis and balancing of resemblances to corporate forms, in the light of what use the petitioner made of them, as was done by the board, or whether, these resemblances aside, the matter is decided, not upon the basis of the powers potentially held by the petitioner, but of those actually used by it, upon what it did, rather than upon what it could do, a regard for the realities of the case before us permits no other decision."

The question under consideration in the recent case of A-C Investment Association v. Commissioner, —— App. D. C. ——, 68 F. (2d) 386, 390, was whether the entity was an association taxable as a corporation or a mutual savings bank not having a capital stock represented by shares, entitled to exemption under applicable revenue acts. The court said:

"That petitioner is not a corporation is obvious; nor is it a trust, because there was no original fund to administer; nor is it an association in the nature of a corporation, though in many aspects it may resemble a corporation.

"But the question whether it is or is not a corporation is not the issue, because the statute does not make that the test. The question is whether it is a savings bank, and the answer to that question depends, not upon its name or upon its incorporation or nonincorporation, but more particularly, as was said by the Supreme Court in Weiss v. Stearn, 265 U. S. 242, 254, 44 S. Ct. 490, 492, 68 L. Ed. 1001, 33 A. L. R. 520, 'by viewing what was actually done.' And the unescapable answer to this is it was organized to do and did do all the things a mutual savings bank, as that term was used by Congress, would do, and likewise was neither organized to do nor did do any of the things which would change that nature to another. In these conditions, it would be to substitute the shadow for the substance to say it was something else because of its name, its location, or its limitations of membership."

The fact that a group of persons associate themselves together for the purpose of engaging in business for profit does not necessarily mean that they must be taxed as an association. That is not the decisive consideration. Most partnerships are formed for the purpose of engaging in business for profit. If Congress had desired or intended to tax every such partnership as a corporation, it could easily have so provided in simple and unmistakable language, and it doubtless would have done so. That could have been accomplished by merely including such partnerships in the definition of a corporation, along with asso-

ciations, joint-stock companies, and insurance companies. The fact that Congress failed to do so in repeated enactments extending over many years indicates strongly the absence of such legislative intent. It is persuasive that Congress intended to tax as a corporation only partnerships conducting their business after the method and form of a corporation, with the economic advantage therefrom, regardless of whether the business is conducted for profit.

Turning now to the methods, modes, and forms of procedure employed by these groups in the conduct of their respective businesses, none of them elected a president, secretary, treasurer, or other officer. No meetings of unit holders were held, except in one instance when those of Iowa-Burk Syndicate convened to decide whether the lease should be sold, and that meeting was occasioned by a requirement of the attorney for the proposed purchaser who regarded the enterprise as a partnership and consequently exacted approval of all members. Aside from that isolated instance, occurring in those circumstances, no meetings of beneficiaries comparable to meetings of stockholders or directors of a corporation were held; and, of course, no record of meetings was made or preserved. No seal was provided or used and no offices were maintained. The trustees were virtually free from supervision, domination, or control of the beneficiaries, similar to that vested in, and usually exercised by, directors of a corporation over its officers. The beneficiaries did not attempt to exercise any measure of control over the trustees or the trust estate. Their sole and exclusive function was to receive distributions of proceeds from time to time. Apart from that they did nothing. The trustees did everything. They decided how many wells should be drilled; they sold the oil and received the proceeds; they determined when distributions should be made and the amounts of them. Save in one instance, no successor to any of the trustees was selected. Burns succeeded Holden as trustee of Iowa-Burk Syndicate. His selection apparently was effected through assent of a part, not all, of the shareholders without any meeting. Otherwise the power to select successors to the named trustees was never exercised. There was no departure from the particular enterprise contemplated at the time the trust was formed, except when the wells were drilled on the Herbert and Basom lands, and the Board found that in those instances it was done for the full utilization of the surplus equipment acquired by the syndicate for the business of the trust estate. No doubt, the equipment became surplus because the two wells previously drilled with it were dry.

The facts just canvassed demonstrate that the method, mode, and procedure of each of these entities in the conduct of its business was strikingly different and substantially dissimilar from that usually employed by a corporation. The system and course of procedure approximates much more closely that of an ordinary partnership among personal friends reposing full confidence in each other. The resemblances predominate strongly in favor of a trust. Consequently, the entities should have been taxed as trusts, not associations. Commissioner v. Duckwitz (C. C. A.) 68 F.(2d) 629. Attention is directed to the fact that the case just cited involved the Iowa-Burk Syndicate. Duckwitz was a member along with the respondent Brouillard. It was held there that the syndicate was taxable as a trust. And it may be said in passing that the same organization was considered in Burnet, Commissioner, v. Burns (C. C. A.) 63 F.(2d) 313. It was held there that the four original investors were, in their tax status, tenants in common and not members of an association taxable as a corporation.

We think the orders of the Board of Tax Appeals were severally correct.

No. 888, affirmed.

No. 945, affirmed.

No. 951, affirmed.