## COMMISSIONER OF INTERNAL REVENUE v. KELLEY et al.
### No. 2939.

Circuit Court of Appeals, First Circuit.
Dec. 1, 1934.

Arnold Raum, Sp. Asst. Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for petitioner for review.

Joseph W. Worthen, of Boston, Mass. (Holmes & Worthen, of Boston, Mass., and George M. Morris, Allen H. Gardner, and Morris, KixMiller & Baar, all of Washington, D. C., on the brief), for Kelley et al., trustees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals under sections 1001–1003 of the Revenue Act of 1926, as amended by the Revenue Act of 1928 (section 603) and the Revenue Act 1932 (section 1101, subd. a [26 USCA §§ 1224–1226]). The question presented is whether a common-law trust created by the respondents in 1925 is an association within the definition laid down in the case of Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949, and therefore subject to be taxed as though a corporation. Section 2 (a) (2) of the Revenue Act 1926, 26 USCA § 1262 (a) (2), and section 701 (a) (2) of the Revenue Act 1928, 26 USCA § 2701 (a) (2).

Under such a petition only questions of law can be reviewed. All findings of fact by the Board of Tax Appeals in this case are agreed to by the parties.

The business of the Union Paste Company, under which name the trustees did business from 1925 to 1930, had been established by the petitioners' grandfather in 1866, and was conducted under a family partnership until the creation of this trust in November, 1925.

In 1912, Anthony Kelley, the father of these petitioners, the petitioners themselves, and another son, Chester B. Kelley, entered into a new partnership agreement under which it was agreed that upon the death of Anthony Kelley the partnership business should be divided among the three sons; but his wife, E. Florence Kelley, should during her lifetime receive 25 per cent. of the net income of the business, and that upon the death of either one of the sons, the wife of such deceased son should receive 10 per cent. of the net income for a period of not more than ten years.

Anthony Kelley died in 1917, and the partnership business was thereafter carried on by the three sons until 1920, when Chester B. Kelley died.

From the time of the death of Anthony Kelley in 1917, payments were made to E. Florence Kelley of 25 per cent. of the net income in accordance with the partnership agreement, which it was understood was in lieu of her right to an accounting of her husband's share in the partnership assets.

Following the death of Chester B. Kelley in 1920, 10 per cent. of the net income was paid to his widow, Helen W. Kelley, until 1925, when she became dissatisfied and claimed the right to an accounting of her husband's interest in the partnership assets and proceeded to litigate her interest, which was not decided until 1930.

On November 2, 1925, the petitioners, Joshua C. Kelley and Herbert W. Kelley, Helen W. Kelley having refused to enter into an agreement defining her interest in the business, executed a declaration of trust, which it is admitted was created "not for corporate purposes or ends, but as a temporary measure to ensure a binding determination of the interest of Helen W. Kelley in the enterprise." It is also admitted that a form of trust was adopted after corporate forms and partnership relations had been rejected by the surviving partners.

It is true that in form the declaration of trust was broad in its powers, and contained many provisions similar to those of the usual articles of association or corporate charters, and the trust was authorized to acquire and carry on the business of the Union Paste Company, and also to acquire trade-names, formulae, inventions, letters patent, to assign, transfer, mortgage, and deal in personal property of all kinds, issue bonds and debentures when necessary for carrying on the business of the trust, purchase, invest in, hold, own, mortgage, or pledge shares of capital stock, bonds, mortgages, or other securities of corporations, and to sell or exchange the assets of the trust and to do a general manufacturing and mercantile business.

It was provided in the declaration of trust that the trustees could use the name of Union Paste Company in executing contracts and signing checks, notes, drafts, and bonds; and might appoint a president, treasurer, and clerk; that meetings of the trustees might be held and a record kept; it provided that certificates might be issued to the cestuis qui trustent, but such certificates should not be transferable unless the trustees so determined; it provided that there should be issued to the petitioner Joshua C. Kelley a certificate for forty-five shares of beneficial interest under the trust, and to the petitioner Herbert W. Kelley thirty shares of beneficial interest; it also provided for the payment to E. Florence Kelley of 25 per cent. of the net earnings of the business after certain deductions, which apparently was considered as representing the other 25 per cent. of the beneficial interest.

No certificates of beneficial interest were issued to E. Florence Kelley or to Helen W. Kelley, nor was any provision made in the declaration of trust for the payment to Helen W. Kelley of any part of the net income, her interest then being in litigation.

The term of the trust was three years after the death of the last survivor of the two trustees, unless terminated sooner by vote of the trustees.

It is admitted, however, that Joshua C. Kelley and Herbert W. Kelley, the instant trustees, had complete charge of the trust affairs during the years 1926, 1927, and 1928, and, although the former was designated in the declaration of trust as president and treasurer, and the latter as clerk, they conducted the enterprise in the same manner as they had theretofore conducted the partnership; that Joshua C. Kelley attended to the financial matters, including the distribution of profits to the beneficiaries, and Herbert W. Kelley served as chemist and directed the manufacturing. Neither E. Florence Kelley nor Helen W. Kelley had any control over the trust affairs; that no meetings were ever held by the trustees alone or with E. Florence Kelley and Helen W. Kelley; that each of the trustees attended to his duties in the conduct of the business and informed the other of what he was doing from time to time; that the trust had no minute books, no bylaws, and no directors. The trust had a seal which was used in filing tax returns and

claims in bankruptcy; that the trustees did not issue bonds or debentures of any kind and did not attempt to secure outside capital and the enterprise remained a family affair; that on a few occasions on which they borrowed money, in each instance the creditor required that they indorse the note as individuals.

During the taxable period here in question, 25 per cent. of the net income was paid to E. Florence Kelley, and 10 per cent. was credited to a suspense account to provide for the payment to Helen W. Kelley when her rights were determined.

The Commissioner found that the trust thus created was an association within the definition laid down in Hecht v. Malley, supra, and was taxable as a corporation, and assessed a deficiency tax for the years 1926, 1927, and 1928, and to the amount for the respective years of $22,199.64, $19,384.67, and $21,823.19.

The Board of Tax Appeals upon a petition by the trustees for a redetermination held that the trust was not a body of persons doing business according to the forms and general mode of procedure of a corporation; or, in other words, was not an association, but was taxable as a trust, and found the deficiencies for the years 1926, 1927, and 1928 should be respectively $9.34, $4.23, and $52.23.

While the powers of the trustees under the declaration of trust were broad and the form of organization authorized in the declaration of trust was similar in many respects to that of a corporation, the trustees never exercised these powers; and, although Joshua C. Kelley in the declaration of trust was named as president and treasurer, and Herbert W. Kelley as clerk, it does not appear that either ever performed the usual duties of the office to which he was appointed. It is admitted that the two trustees conducted the business just as they had been accustomed to do as partners, and that upon the termination of the litigation with Helen W. Kelley in 1930, they terminated the trust and entered into a new partnership agreement.

▆ Whether a common-law trust is an association within the meaning of the Revenue Act is not always easy of determination. The decisions in which the courts have attempted to draw the line of demarkation between a trust and an association have left it very vague and difficult of application. No absolute rule for such classification has yet been laid down by the Supreme Court, and the Regulations of the Treasury Department, 74, Art. 1314, cannot be held to be exclusive in defining the line between a trust and an association.

In Morriss Realty Co. v. Commissioner, 23 B. T. A. 1076, 1084, the Board of Tax Appeals laid down as a triple test:

"(1) Business purpose; (2) business operations; and (3) quasi-corporate structure"; and adding: "There has unavoidably been some variation in emphasis, depending upon the particular facts of the case, put by various courts upon these tests."

In Ittleson v. Anderson (D. C.) 2 F. Supp. 716, 719, the court said:

"Under the opinion from which the foregoing excerpts have been quoted, there appear to be three elemental requisites to a trust which, under the capital stock tax statutes, is to be regarded as an 'association': (1) It should have a 'quasi corporate form'; (2) its trustees should be 'associated together in much the same manner as the directors in a corporation'; and (3) the trustees must be engaged in carrying on a business."

In some cases, especially where the issue was the imposition of an excise tax to do business, emphasis has been laid on whether they were conducting a business for profit, or on the business test, so called, Hecht v. Malley, supra; in others, the form in which the affairs of the trust was carried on seems to have been the controlling factor in determining whether the organization was an association or a simple trust, Twin Bell Oil Syndicate v. Helvering (C. C. A.) 70 F.(2d) 402; Commissioner v. Pryor & Lockhart Development Co. (C. C. A.) 70 F.(2d) 154, 158; Gardiner v. United States (C. C. A.) 49 F.(2d) 992; Lucas v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65; while in the case of Commissioner v. Morriss Realty Co. (C. C. A.) 68 F.(2d) 648, at page 652, the court said, quoting Morriss Realty Co. Trust No. 1 v. Commissioner, 23 B. T. A. 1085:

"But even if we say that they [the trustees] were engaged in business we must not lose sight of the original purpose for which the trust was created, that of liquidation of the property; and the doing of other acts incidental to this ultimate purpose would be justified on the ground of conservation of property and securing the means of earlier liquidation."

The courts have also said that, in determining whether a trust is taxable as a corporation, substance rather than form is to be regarded; but each case must be determined on its own facts.

In addition to the above cases, the Board of Tax Appeals and the courts have had occasion to pass upon this question in a variety of forms, sometimes emphasizing one test and sometimes another. See Blair v. Wilson Syndicate Trust (C. C. A.) 39 F.(2d) 43; Commissioner v. Atherton (C. C. A.) 50 F.(2d) 740; Commissioner v. Morriss Realty Co., supra; Dunbar v. Commissioner (C. C. A.) 65 F.(2d) 447; Ittleson v. Anderson, supra; Lansdowne Realty Trust v. Commissioner (C. C. A.) 50 F.(2d) 56; Tyson et al. v. Commissioner (C. C. A.) 54 F.(2d) 29; Crocker v. Malley, 249 U. S. 223, 39 S. Ct. 270, 63 L. Ed. 573, 2 A. L. R. 1601; Burk-Waggoner Oil Association v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183; Investment Trust of Mutual Investment Co. v. Commissioner, 27 B. T. A. 1322; Morriss Realty Co. v. Commissioner, 23 B. T. A. 1076.

These do not by any means include all of the decisions of the court, or the Board of Tax Appeals, in which this question was involved, but they are sufficient to indicate how difficult it is to determine from them any absolute or conclusive test.

■ From the cases cited, however, it may be deduced that there is no law prohibiting trustees from carrying on business for profit; but if the trustees are given absolute control over the business and the cestuis qui trustent have no control, either over the trustees or the business, such a trust is not taxable as a corporation. If the purpose of the trust is a temporary one, as in the case of liquidating a business, or under the trust the trustees are merely a means for the distribution of income or property, it is not taxable as a corporation.

■ We can, at least, start in this case with the proposition that this was not a corporation or a partnership, and it was admitted that the surviving partners rejected both forms of conducting their business during the litigation with Helen W. Kelley.

While the trust here involved can be said to be an organized body without a charter, the main issue, as we view it, is not whether they conducted a business and for profit, but whether they conducted such business from 1925 to 1930 "upon the methods and forms used by incorporated bodies," or as an organization "having the general form and mode of procedure of a corporation."

While under the declaration of trust they could have used many of the forms and modes of procedure of a corporation, they did not do so during the continuance of the trust.

In the first place, it is admitted that the sole purpose in organizing the trust was a temporary one, viz., to bring to a conclusive binding determination the interest of Helen W. Kelley in the income of the enterprise. The government seeks to distinguish between motive and purpose; but while the motive for the creation of this trust was the demand of Helen W. Kelley for an accounting, the purpose of creating the trust is admitted to have been to secure a conclusive, binding determination of her interest, and, incidentally, during the pending litigation, to conduct the business along the same lines as under the partnership, with the trustees having full control.

Corporate forms are used ordinarily to secure continued existence of the entity; here, the purpose was temporary, and, as soon as accomplished, the trust was terminated and the partnership form revived. Under corporate forms the shareholders elect the directors and have certain control, at least, in a negative way, over the corporate property; here, the beneficiaries as such had no control over the trustees, nor did they elect them. Corporate shares of stock are transferable; here, the certificates to beneficiaries were not transferable, though the trustees who held them all could at a meeting make them transferable. Directors or stockholders under by-laws hold meetings for transacting the corporate business; here, there were no by-laws, nor were any meetings of the trustees ever held under the declaration of trust. Corporations are, in general, required to have at least three directors, in order that a majority may act; but here, there were only two trustees, and under a private trust all trustees must consent to any action unless otherwise stipulated in the trust agreement. Perry on Trusts (7th Ed.), § 413.

The determining factor in this case, we think, is not what the trustees could have done under the declaration of trust, nor yet whether in carrying out the purpose for which the trust was created, the trustees were conducting a business and for profit; but the form and manner in which they proceeded in conducting the affairs which were intrusted into their hands during the existence of the trust. Gardiner v. United States, supra; Dunbar et al. v. Commissioner, supra; Lucas v. Extension Oil Co., supra; Commissioner v. Duckwitz (C. C. A.) 68 F.(2d) 629; Commissioner v. Pryor & Lockhart Development Co., supra, page 158 of 70 F.(2d).

In the last-cited case the court well stated the controlling factors in determining how "a body of persons" without a charter doing business should be treated in assessing an income tax:

"Where an entity of this kind resembles a corporation in some respects and that of a partnership in others—that frequently being the case—the features of similarity should be compared and the marks of dissimilarity contrasted. The resemblances should be balanced. It should be determined by that method the one to which the enterprise is predominantly akin in the method, mode, and form of procedure in the conduct of its business. If it be a corporation, it falls within that category; if a partnership, it should be placed in that class and should be taxed accordingly. Tyson v. Commissioner, supra. In Lucas, Commissioner, v. Extension Oil Co. (C. C. A.) 47 F.(2d) 65, 67, involving facts similar to those presented here, the court declared the applicable doctrine as follows:

" 'The Board of Tax Appeals in a careful opinion, balancing the resemblances which petitioner in its structure bore to a trust, against those which it bore to a corporation, and considering also the facts as to what the petitioner actually did, found as a fact and concluded as a matter of law that petitioner was not an association within the meaning of the taxing act, "voluntarily organized to transact business under corporate forms and transacting such business."

" 'With this opinion we agree, for we think it plain that whether the matter be decided from the standpoint of an analysis and balancing of resemblances to corporate forms, in the light of what use the petitioner made of them, as was done by the board, or whether, these resemblances aside, the matter is decided, not upon the basis of the powers potentially held by the petitioner, but of those actually used by it, upon what it did, rather than upon what it could do, a regard for the realities of the case before us permits no other decision.' "

To constitute a trust an association, and taxable as a corporation, there must be a body of persons associated together who are (1) actually carrying on business for profit, and (2) under the usual forms and procedure of corporations. Both conditions must be present. On the admitted facts in this case, we find no errors of law in the decision of the Board.

The decision of the Board of Tax Appeals is affirmed.