## COMMISSIONER OF INTERNAL REVENUE
### v. COMBS et al.
### No. 7523.

Circuit Court of Appeals, Ninth Circuit.
April 11, 1935.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Louise Foster, and Lucius A. Buck, Sp. Assts. to Atty. Gen., for petitioner.

Latham, Watkins & Bouchard, Dana Latham, Miller, Chevalier, Peeler & Wilson, and Melvin D. Wilson, all of Los Angeles, Cal., for respondents.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

WILBUR, Circuit Judge.

The Commissioner of Internal Revenue determined a deficiency in the tax of the respondents for the years 1925 and 1926 amounting to $7,369.22. This deficiency it appears was assessed upon the theory that the respondents were acting as an association and therefore taxable under the Revenue Act of 1926, § 2 (a), 44 Stat. 9 (26 USCA § 1262 (a), as interpreted by Treasury Regulations 69, promulgated under that act, Arts. 1502, 1504. The Board of Tax Appeals reversed the decision of the Commissioner upon the ground that the respondents were not an association, and the Com-

missioner brings this petition to review the act of the Board of Tax Appeals. The question as to whether or not organizations are taxable as associations under the Revenue Act is one that has been frequently before the courts and is not free from difficulty. The various decisions have been collected and discussed in a number of recent cases. Reinecke v. Kaempfer (C. C. A.) 72 F.(2d) 469, 470; Twin Bell Oil Syndicate v. Helvering (C. C. A.) 70 F.(2d) 402; Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949; Commissioner v. Brouillard (C. C. A.) 70 F.(2d) 154; Burk-Waggoner Oil Ass'n v. Hopkins, 269 U. S. 110, 46 S. Ct. 48, 70 L. Ed. 183. We think it unnecessary to enter into an extended discussion of the various decisions of the courts of appeals dealing with the question, or to attempt to establish the proper rule for determining the question of tax liability. The tendency of the recent cases is to deal with the facts of the particular case rather than to attempt to define the term "association" more precisely than is done by the regulations of the Treasury Department. So stated, Judge Sparks, speaking for the Circuit Court of Appeals in the Seventh Circuit in Tyson v. Com'r, 68 F.(2d) 584 (in February 1934), as follows: "The trend of these decisions seems to be to look to the actual activities of the entity first, rather than to its form or possible powers."

So also is the statement of Judge Alschuler, speaking for the same court in Reinecke v. Kaempfer, supra (in June 1934), where he said: "We are satisfied that the similitude referred to is not in those essentials which distinctly stamp the entity as a corporation, but rather in the business carried on and the manner of its transaction."

Judge Wilson, speaking for the Circuit Court of Appeals for the First Circuit, dealt with this matter in a recent opinion [Commissioner v. Kelley, 74 F.(2d) 71, 73], saying: "The courts have also said that, in determining whether a trust is taxable as a corporation, substance rather than form is to be regarded; but each case must be determined on its own facts."

In the latter case (Commissioner v. Kelley, supra) Judge Wilson reviewed the decisions on this subject and deduced the conclusion that: "To constitute a trust an association, and taxable as a corporation, there must be a body of persons associated together who are (1) actually carrying on business for profit, and (2) under the usual

forms and procedure of corporations. Both conditions must be present." ·

In Twin Bell Oil Syndicate v. Helvering, 70 F.(2d) 402, 408, we considered the proper interpretation of the statute and rules of the Treasury Department concerning the taxability of associations there involved and held that the Twin Bell Oil Syndicate was such an association. Judge Sawtelle, speaking for the court, said: "* * * we are impelled to the conclusion that the taxpayer was engaged in business, that its organization was of a quasi corporate character, and that, as a consequence, it was an 'association' and should be taxed as a corporation under the provisions of the Revenue Act of 1926 and the Treasury regulations promulgated thereunder."

This case was reversed by the Supreme Court on other grounds (December 3, 1934) 293 U. S. 312, 55 S. Ct. 174, 79 L. Ed. ——.

It is agreed that one of the tests for determining whether or not a trust is so organized as to constitute an association within the meaning of the taxing laws is whether or not the trustees are authorized to conduct business and do so. Inasmuch as the purpose of the act is to treat associations, corporations, joint-stock companies, and insurance companies on a basis distinct and separate from that applicable to trusts or co-partnerships, it is clear that while a trust may be organized so that the trustees can do business, their powers, duties, obligations, and methods of doing business, and the relationship of the trustees to the beneficiaries, must in some degree correspond to the similar duties and obligations of directors and stockholders of a corporation in order to make the trust taxable as an association. The first test, as to whether or not the trust is one to do business, as distinguished from one for merely holding investments for the beneficiaries and for the transaction only of the incidental business essential to holding and maintaining the trust property so as to realize an income therefrom, is a relatively simple one; while the second test, as to whether or not the trust is so organized as to constitute it a quasi corporation or association because of its methods of doing business and its organization therefor, is a more difficult one involving more detailed consideration of the plan of operation. As we understand the respondents, they do not question that the trust herein was doing business, but they contend that they do not meet the second test. They claim that they "were neither organized nor did they operate in any sense of the word along the modes, methods and manners ordinarily employed by corporations." With these contentions in mind, we will state more in detail the facts concerning the trust and the business conducted thereunder by the respondents.

The Hub Oil Company was the owner of a certain oil lease on a town lot of Athens, Cal., which lease was subject to a royalty reserved to the lessor. E. E. Combs and Edward Everett were desirous of developing the property in conjunction with the Hub Oil Company and Sheridan Bailes, an oil well driller. Under date of February 6, 1925, a "Memorandum of Formation of Express Trust" was drawn up and signed by the parties, which had for its purpose "to finance and drill a well for production and sale of oil and other hydro-carbon substances" under the oil lease owned by the Hub Oil Company. The trust agreement recited that the Hub Oil Company, as assignor, had transferred to E. E. Combs and Edward Everett, as trustees, all its rights as lessee under the lease, subject to a reservation of a percentage of the oil, gas, and other hydro-carbon substances which may be produced and saved under said lease. The assignor also agreed to furnish a derrick for drilling an oil well, which was to be paid for out of production. The trust agreement also recited that a contract had been entered into by Combs and Everett with Bailes for sinking a well. By the terms of the contract, Bailes was to furnish the necessary tools for drilling the well and to superintend all drilling and production operations for a percentage of the oil produced. Combs and Everett, as trustees, were to pay for the cost of the labor, for the oil well casing, and for the incidental supplies needed in sinking the well. To proceed with the development of the property it was only necessary to secure the money to pay for the labor costs, the oil well casing, and incidental supplies. In order to secure this money the beneficial interest in the trust was divided into shares and twenty-five shares, each representing one per cent. of the production less deduction for expenses, were sold for $1,000 each. The trust memorandum stated that the "whole beneficial interest of this trust represents .71333 per cent of the gross production of the well, subject to the terms hereof." This interest was to be owned as follows: (1) 25 per cent. by beneficiaries providing money for trust purposes; (2) .44333 per cent. by E.

E. Combs; and (3) .02 per cent. by Edward Everett. By the terms of the trust agreement E. E. Combs was required to sell such portion of his beneficial interest as was needed, over and above the amounts received from the twenty-five shares, for the completion of the well. Upon the completion of the well it was provided that the moneys derived from the sale of oil produced therefrom were to be paid into a bank named in the trust agreement which was to disburse the moneys in payment of the operating expenses and distribute the balance to the beneficiaries in proportion to their beneficial interest. The trust was terminated after the well had been producing for two years by the sale of the interest of the trustees and the distribution of the proceeds to the beneficiaries in accordance with their several interests.

The trust agreement gave the two trustees large powers over the property of the trust similar to those of a board of directors of a corporation, but they had no seal, no principal place of business. There was no provision in the trust agreement for meetings of the trustees or the beneficiaries. The latter had no control over the trustees and no participation in the selection of the trustees or their successors. As above stated, the business necessary to develop the lot for oil production had been largely completed by Combs and Everett before the trust was formed. The sale of the twenty-five shares (25 per cent. of the beneficial interest) was required to secure the needed capital for drilling the well. Thereafter the trustees had little to do except to arrange for the care of the well and the marketing of the oil. There was no authority in the trust agreement for conducting a general oil development or oil producing business or to drill more than one well under the lease held by the trustees.

The respondents point out that the trust agreement made no provision for the election of trustees annually or otherwise. Upon the death, resignation, or refusal of one to act, the other was authorized to act alone. There were no corporate officers, no by-laws, no corporate or association name. While the question involved is a close one not free from difficulty, we conclude that the Board of Tax Appeals was right in holding that the organization was not an association within the meaning of the Revenue Act, but rather that it was a trust, taxable as such. Coleman-Gilbert Associates v. Commissioner (C. C. A. 1) 76 F.(2d) 191, decided February 27, 1935, Prentice-Hall Federal Tax Service 1935, p. 889.

Order affirmed.